481 A.2d 648

**Patricia C. BRUZZI**

v.

**James A. BRUZZI, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1984.

Filed Aug. 17, 1984.

348

George Stenhach, Coudersport, for appellant.

Jeffrey E. Leber, Coudersport, for appellee.

Before POPOVICH, HOFFMAN and LIPEZ, JJ.

POPOVICH, Judge:

■ This is an appeal from a judgment of sentence [1] entered by the Court of Common Pleas of Potter County,

---

1. Appellant, in his brief, mistakenly characterizes his appeal as arising from an order. The order of the lower court was reduced to judgment and is therefore appealable under Pa.R.A.P. 302(a).

Pennsylvania, on August 10, 1982, which found appellant, James A. Bruzzi, defendant therein, in criminal contempt of court and sentenced him to incarceration for a period of fourteen days.[2] We vacate judgment of sentence and remand.

The procedural background of this case is as follows. On February 6, 1981, Patricia C. Bruzzi filed a complaint in divorce against appellant which was granted on October 16, 1981. The instant appeal arises from an order of court dated August 24, 1981, in which custody of the parties' three children was awarded to their mother, Patricia C. Bruzzi, allowing for appellant's visitation rights set forth specifically in the order.

> He [appellant] shall take all three children every other weekend commencing August 28, 1981, from Friday at six p.m. until Sunday at six p.m. Further, the defendant shall have off premises visitation throughout the weekdays, each and every week, as to one or more of the children, for no longer than twenty-four hours at a time. The defendant shall not exercise a weekday overnight visitation as to any one child more often than once every two weeks.

> The defendant shall give the plaintiff twenty-four hours notice concerning the exercise of any weekday visitation before exercising same, wherein he shall inform the plaintiff as to the child or children that he is to visit, together with the length of anticipated time of such visitation.

On July 16, 1982, in accord with his weekend visitation rights, appellant picked up his children; however, instead of

---

**2.** The judgment of sentence imposed was contained in an Order of Court docketed August 10, 1982; appellant filed his Motion for a New Trial and In Arrest of Judgment on August 18, 1982 which was denied on September 16, 1982, one day *after* he filed his Notice of Appeal. The lower court lacked jurisdiction after Notice of Appeal was filed on September 15, 1982. Pa.R.A.P. § 1701(a). We also note that appellant's Notice of Appeal was untimely; however, at sentencing the 30-day restriction on filing the Notice was not made clear to appellant. Moreover, the lower court ordered immediate filing of the appeal in the same Order which denied appellant's post-verdict motions. Therefore, notwithstanding any jurisdictional challenge available to us, we will review the judgment of the lower court.

returning them to their mother at the time specified in the order, he transported them to another state where they were to remain for approximately one week, at which time appellant returned them to their mother. During this time, Mrs. Bruzzi had no knowledge of their whereabouts.

A petition was filed by Mrs. Bruzzi on July 26, 1982, with a Rule directed against the appellant to show cause why appellant should not be held in contempt of the aforementioned court order. A hearing was held on the return day of the rule, *viz.*, August 9, 1982, in which the court found appellant guilty of criminal contempt and sentenced him. The court, pursuant to a request for bail thereafter filed by appellant, set bail in the amount of $2,500.00 pending appeal. Thereafter, appellant filed an unsuccessful motion for a new trial and in arrest of judgment, in which he raised the identical issue which is herein on appeal.

The sole issue with which we are concerned is whether under the facts of this case, a Common Pleas court can sentence a defendant to imprisonment upon a finding of *indirect* criminal contempt. Before dealing with that question, our threshold inquiry must be to determine whether the rather uncertain characterization of the contempt by the lower court is appropriate.

We hold that appellant's conduct constituted indirect criminal contempt. The lower court opinion admits to some degree of uncertainty but finally characterizes the contempt as criminal. Although the lower court attaches little significance to the distinction, civil and criminal contempts may not be casually commingled. *Kramer v. Kelly,* 265 Pa.Super. 58, 401 A.2d 799 (1979). Any choice of labels is extremely important because of the rights attendant to a finding of criminal contempt. Criminal contempt is a crime, and the legislature has surrounded the proceeding with appropriate procedural safeguards. *Cipolla v. Cipolla,* 264 Pa.Super. 53, 398 A.2d 1053 (1979). Where the same facts might give rise to criminal as well as civil contempt, each has its own distinct procedures and confers distinct procedural rights. *See e.g., Philadelphia Marine Trade Associ-*

*ation, et al. v. International Longshoremen's Association Local Union No. 1291, et al.,* 392 Pa. 500, 140 A.2d 814 (1958).[3]

First, we must inquire whether the contempt was of a civil or criminal nature. Contempt does not automatically become categorized as criminal upon a lower court so holding. *Schlesinger v. Musmanno,* 367 Pa. 476, 81 A.2d 316 (1951).

■ Contempt may be of a civil or criminal character, and criminal contempts are further divided into direct and indirect. *Commonwealth v. Marcone,* 487 Pa. 572, 410 A.2d 759 (1980); *Brocker v. Brocker,* 429 Pa. 513, 241 A.2d 336 *cert. denied,* 89 S.Ct. 857, 393 U.S. 1081, 21 L.Ed.2d 773 (1969). The court must look at *"[t]he dominant purpose of a contempt proceeding* [which] *determines whether it is civil or criminal.* If the dominant purpose is to vindicate the dignity and authority of the court *and to protect the interest of the general public,* it is a proceeding in criminal contempt." *Brocker v. Brocker, supra,* 429 Pa. 522, 241 A.2d at 340; *Knaus v. Knaus,* 387 Pa. 370, 127 A.2d 669 (1956). "But where the act of contempt complained of is a refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with a decree of court are civil in nature." *Brocker v. Brocker, supra,* 429 Pa. 522, 241 A.2d at 340.

■ On the other hand, criminal contempt is of a punitive character. In *Cipolla v. Cipolla,* 264 Pa.Super. 53, 398 A.2d 1053 (1979), defendant violated a Protection From Abuse Act order. He was held to be in civil contempt;

---

**3.** "Thus, where one is accused of indirect criminal contempt, he shall enjoy the normal rights as to admission to bail ... rights to be notified of the accusation and time to prepare a defense ... the right to a speedy and public trial by an impartial jury ... the assistance of counsel ... and [he] may only be found guilty if every element of the crime is proven beyond a reasonable doubt ... [i]n short, the accused in such a proceeding is entitled to the essential procedural safeguards that attend criminal proceedings generally." *Cipolla v. Cipolla,* 264 Pa.Super. 53, 59, 398 A.2d 1053, 1056 (1979).

however, on appeal the court stated that "[t]he sole motivation was the endeavor to punish [appellant] for non-compliance. Our examination of the record and opinion of the court below shows that the court was not inclined to fashion a remedial order ...." *Cipolla v. Cipolla, supra,* 264 Pa.Superior Ct. 57, 398 A.2d at 1055. A civil label is inappropriate when the court is attempting to punish the contemnor for past acts of misbehavior rather than setting forth the conditions of compliance to which the contemnor was required to conform and conditioning punitive measures on failure to comply therewith. *Philadelphia Marine Trade Association, et al. v. International Longshoremen's Association Local Union No. 1291, et al.,* 392 Pa. 500, 140 A.2d 814 (1958).

■ It does not matter whether the authority of the court is incidentally vindicated, which it is more often than not. This will not convert a mainly criminal contempt finding into a civil one. Of course, the same facts may amount to both types. *Commonwealth v. Strickler,* 481 Pa. 579, 393 A.2d 313 (1978).

■ Descriptively, the feature which distinguishes the two types of contempt is that a civil contempt order, because of its coercive nature, will necessarily have a condition upon which the contemnor may purge himself. This is the proverbial "key to the jailhouse door." *Barrett v. Barrett,* 470 Pa. 253, 368 A.2d 616 (1977). *Janet B. v. Carros,* 240 Pa.Super. 291, 362 A.2d 1060 (1976). This is true even when the condition is simply an apology to the court. *In Re Ebo,* 244 Pa.Super. 163, 366 A.2d 1243 (1976). For example, in *In Re "B",* 482 Pa. 471, 394 A.2d 419 (1978), the Pennsylvania Supreme Court found the appellant in direct criminal contempt. The court stated, "No conditions or standards were attached which would have allowed appellant to purge himself of his contempt by compliance with the court's order. Appellant was thus powerless to escape by compliance. Thus the contempt was criminal in nature ...." *In Re "B", supra,* 482 Pa. 477, 394 A.2d at 421.

With the foregoing in mind, we find that appellant's actions constituted criminal contempt.[4] The Order of Court dated August 24, 1981, sets forth certain conditions surrounding appellant's visitation rights. His violation of those specifics was complete when he returned the children to their mother. If at the time the contempt order was entered appellant still had extra-judicial custody of the children, then the court might have allowed its order to contain some coercive effect. Additionally, it would certainly have allowed appellant an opportunity to "purge" himself by returning the children. However, under the facts of this case, appellant could not be coerced into returning the children; he had already done so. Similarly, there could be no purging condition.[5]

We must next inquire into whether the contempt was direct or indirect. ". . . [D]irect criminal contempt consists of misconduct of a person in the presence of the court or so near thereto to interfere with its immediate business, and punishment for such contempts may be inflicted summarily . . . ." *Knaus v. Knaus, supra,* 387 Pa. 375, 127 A.2d at 671. This descriptive term has been stretched to extend far

**4.** In *Simmons v. Simmons,* 232 Pa.Super. 365, 335 A.2d 764 (1975), violation of a visitation order was held to be civil contempt. We would distinguish that case, and cases like it, on the basis that the dominant purpose of the court there was to coerce the parties into abiding by the order and thereby to benefit the spouse who was attempting to enforce it, whereas here the dominant purpose is to vindicate the authority of the Court of Common Pleas of Potter County and to punish appellant for his act. His incarceration will only incidentally coerce him into abiding by the order in the future. After the court in *Simmons* found the contempt to be civil, it remanded in part because the contempt order contained no purging condition. The lower court opinion states that the author's purpose is to "uphold the dignity of the court." Opinion, Fink, J. at 7.

**5.** It might be argued that the dominant purpose of the lower court was to coerce appellant into abiding by the terms of the original, amended custody order and that, as such, the court's purpose could be characterized as civil. This argument is without merit for two reasons (1) even were the appellant in the future to act in strict conformance with the requirements of the custody order, his incarceration would have either happened or be pending notwithstanding his attempts to abide; and (2) *all* criminal penalties are formulated with the intent to coerce that citizen (and others) to thereafter act within the law.

beyond the reaches of the immediate courtroom. For example, in *Commonwealth v. Shaw*, 280 Pa.Super. 575, 421 A.2d 1081 (1980), the defendant's decision not to return to his parole revocation hearing subjected him to a finding of contempt committed "in open court." We find no authority, however, for stretching the area encompassed by that phrase to allow this instance of contempt to be termed direct. We, therefore, hold appellant guilty of indirect criminal contempt. The importance of such distinction lies in the very wording of the statutes which allow for summary punishment in certain instances:

42 Pa.C.S.A. § 4131 reads as follows:

### § 4131. Classification of penal contempts

The power of the several courts of this Commonwealth to issue attachments and *to inflict summary punishments* for contempts of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice. (Emphasis added) 1976, July 9, P.L. 586, No. 142 § 2, effective June 27, 1978.

We agree with the lower court that 42 Pa.C.S.A. 4131 simply classifies those contempts which may be dealt with summarily. This section and all sections relating to contempt must be read *in pari materia.*

42 Pa.C.S.A. 4132 reads as follows:

### § 4132. Punishment for contempt

Except as otherwise provided by statute, the punishment of imprisonment for contempt *as provided in section 4131* (relating to classification of penal contempts) shall extend only to such contempts as shall be committed in open court, and *all other contempts shall be punished by fine only.* (Emphasis added)

1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978.  As amended 1978, April 28, P.L. 202, No. 53 § 10(52), effective June 27, 1978.

■ This section has been construed to restrict the sanction of punishment by imprisonment to direct contempts where summary punishment is employed. *Commonwealth v. Marcone*, 487 Pa. 572, 410 A.2d 759 (1980).[6]

■ Concomitantly, 42 Pa.C.S.A. 4135, after setting forth procedural safeguards for persons guilty of certain indirect criminal contempts, allows for punishment by imprisonment for those same types of indirect criminal contempts.  42 Pa.C.S.A. 4135 reads as follows in pertinent part.

§ 4135.  Criminal contempt

(a) **General rule.**—*In all cases* where a person shall be charged with indirect criminal contempt for *violation of a restraining order* or *injunction* issued by a court or judge, the accused shall enjoy:

. . . . .

(b) **Punishment.**—Except as otherwise provided in this title or by statute hereafter enacted, punishment *for a contempt specified in subsection (a)* may be by fine not exceeding $100 or by imprisonment not exceeding 15 days in the jail of the county where the court is sitting, or both, in the discretion of the court.  Where a person is committed to jail for the nonpayment of such a fine, he shall be discharged at the expiration of 15 days, but where he is also committed for a definite time, the 15 days shall be computed from the expiration of the definite time.  1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978.  As amended 1978, April 28, P.L. 202, No. 53, § 10(53), effective June 27, 1978.  (Emphasis added)

**6.** Assuming *arguendo,* that this were a case involving summary punishment, sufficient due process not having been afforded appellant, then because imposition of sentence of imprisonment would be improper in any case not involving direct contempt, we would find the trial court erred in summarily imposing a jail sentence.

Notwithstanding the use of the phrase "In all cases where a person shall be charged with indirect criminal contempt . . .", we see no other conclusion to be drawn but that § 4135 refers only to criminal contempts for violation of (1) a restraining order or (2) an injunction.[7]

■■■■■ Since Section 4135 is limited to certain indirect criminal contempts, the facts of this case do not allow for its application. It is unlikely that the legislature meant to exclude indirect criminal contempts not involving a restraining order or injunction from statutory control. Accordingly, we hold that § 4132 does indeed have application where it states ". . . all other contempts shall be punished by fine only."[8] Although a court's right to punish for contempt is inherent, the manner of its exercise is regulated by the legislature. *Woodruff v. Township of Lower Southampton*, 68 Pa.Cmwlth. 171, 448 A.2d 692 (1982). Therefore, the lower court erred in imposing a sentence of imprisonment for indirect criminal contempt.[9] We vacate the sen-

7. There is authority for such a proposition. In speaking of 17 P.S. 2042, which is enacted in substantially similar form in 42 Pa.C.S.A. § 4132, the court in *Philadelphia Marine Trade Association v. International Longshoremen's Association, supra,* said "The class of 'all other contempts' was the class of criminal contempts which in this Commonwealth have become known as 'indirect criminal contempts' . . . 140 A.2d at p. 819.

8. The language of the statute has at times given rise to the misconception that it applied to *all* cases involving indirect criminal contempt. "The procedure to be followed in *all* indirect criminal contempt matters is clearly enunciated by the legislative body in the Act of 1931 . . ." *Marco Ind., Inc. v. United Steelworkers,* 401 Pa. 299, 164 A.2d 205, 208 (1960) (emphasis original).

This is presumably why, effective December 20, 1982, the legislature changed the title of this section to "Rights of persons charged with *certain* indirect criminal contempts" (emphasis added) and removed the phrase "In all cases where a person shall be" leaving "A person charged with indirect criminal contempt . . . ." The change makes it all the more clear that it refers only to cases involving a restraining order or injunction. *See Commonwealth v. Ferrara,* 487 Pa. 392, 409 A.2d 407 (1979).

9. A court may imprison a contemnor under circumstances such as these; however, under the pertinent legislative restrictions, the sentence must be based upon a civil contempt order with a concomitant purging condition.

tence imposed and remand for action consistent with this opinion. Jurisdiction is relinquished.