533 A.2d 1045

**CROZER–CHESTER MEDICAL CENTER and Reproductive Health and Counseling Center**

v.

**Robert E. MORAN, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 26, 1987.

Filed Nov. 16, 1987.

Eugene Hamill, Glenolden, for appellant.

Donald T. Petrosa, Media, for Crozer–Chester, appellee.

Donald A. Browns, Media, for Reproductive Health, appellee.

Before CIRILLO, President Judge, and TAMILIA and CERCONE, JJ.

TAMILIA, Judge:

This appeal is from an Order requiring appellant, Robert Moran, to pay a fine for contempt of court or in the alternative to be committed to a specific jail term. The sole issue before us is whether the Order in question should be interpreted as imposing penalties for civil or criminal con-

tempt. We conclude the penalties imposed were in the nature of civil, not criminal, contempt.

To reach the conclusion that the contempt Order in question is civil rather than criminal, the June 26, 1986 Order of the lower court, requiring appellant to either make immediate payment of a $1,500 fine or face forty-five days incarceration, cannot be read in isolation from the prior and ongoing proceedings in this action. Had this been an initial hearing, and Order standing alone, the provision of the Order providing for either a fine or jail would sound in criminal contempt. We must look, however, to the February 6, 1986 Order of the lower court wherein appellant was found to be in violation of the original injunction and was adjudicated to be in civil contempt. That adjudication is as follows.

### ADJUDICATION OF CIVIL CONTEMPT

And now, this 6 day of February, 1986, after Defendant, Robert E. Moran, knowingly, intelligently and voluntarily, waived his right to an evidentiary hearing upon the Attachment and Citation of Contempt entered by this Court against Robert E. Moran, it is hereby:

ADJUDGED and DECREED *that the Defendant, Robert E. Moran, is in civil contempt of this Court by reason of his going onto the property of Plaintiffs and otherwise acting in a manner violative of the Court's Decree nisi entered February 10, 1984, and final Decree entered November 9, 1984;* the conduct of the Defendant, Robert E. Moran, has willfully violated the terms and conditions of the decrees of this Court on December 7, 1985, and it is therefore hereby:

ORDERED:

1. *That an [sic] conditional fine of $1500.00 be imposed upon the Defendant, Robert E. Moran; however, the Defendant may purge himself of the contempt and avoid the necessity of paying the fine by staying off the private property of Crozer–Chester Medical Center and*

*Reproductive Health and Counseling Center in accordance with the Court's decrees referred to above, so long as the decrees remain in effect;*

2.  Should sufficient evidence be brought before the Court that the Defendant, Robert E. Moran, has entered onto the private property of the Plaintiffs subsequent to the date of this Order, in violation of this Court's decrees, the Court will order immediate payment of the above fine and in default thereof, the Defendant, Robert E. Moran, will be sentenced to 45 days in the Delaware County Prison;

3.  Said future violation, or any other future violation may also be the basis for a new Petition for Contempt;

4.  The Court hereby finds, based upon the Stipulation of the Defendant, Robert E. Moran, that the said Defendant has the financial ability to pay the fine hereby imposed by this Order;

5.  This Order shall remain in effect until further Order of this Court. (Emphasis added.)

A review of the Order shows a *conditional* fine of $1,500 was imposed, *and in default thereof,* incarceration for forty-five (45) days. Additionally, the Order contained a purging condition whereby appellant could avoid any sanctions by abiding by the terms of the injunction.

This Court, by Per Curiam Order in *Crozer–Chester Medical Center v. Moran* (J–84028/86, filed February 13, 1987), has already found the February 6, 1986 Order to be in the nature of civil contempt. As this appeal is from the June 26, 1986 Order which resulted after appellant violated the February 6, 1986 civil contempt Order, we can not now, in effect, reverse ourselves and find appellant is entitled to a criminal contempt jury trial. Our discussion in that earlier memorandum is applicable here.

In the case of *In Re B*, 482 Pa. 471, 394 A.2d 419 (1978), the Pennsylvania Supreme Court made clear the principles governing this case:

The distinction between criminal and civil contempt is . . . a distinction between two permissible judicial responses to contumacious behavior.

. . . .

These judicial responses are classified according to the dominant purpose of the court. [Quoting *In Re Martorano*, 464 Pa. 66, 77, 346 A.2d 22, 27–28 (1975).]

As we said in *Commonwealth v. Charlett*, [481] Pa. [22], 391 A.2d 1296 (1978), quoting from *Woods v. Dunlop, supra*, 461 Pa. [35] at 40, n. 2, 334 A.2d at [619] 622, n. 2 [1975]:

Discovery of the Court's dominant purpose requires a functional analysis of the court's action. . . . Basically, the reviewing court must decide whether the citing court's purpose was to 'vindicate the dignity and authority of the court and to protect the interest of the general public.' Such citation is for criminal contempt. If the citation's purpose is to coerce the contemnor into compliance with the order of the court to do or refrain from doing some act primarily for the benefit of a litigant or a private interest the citation is for civil contempt. (Citations omitted.)

*Id.*, 482 Pa. at [476], 394 A.2d at 421.

The evidence indicated that appellant entered upon the property of appellees intending to be disruptive of appellees' activities. The court was attempting to coerce the appellant to refrain from acts interfering with the private rights of others. This is in the nature of civil contempt. Appellant's actions were in direct contravention of the terms of the injunction and, therefore, we hold that the lower court did not abuse its discretion in sanctioning appellant.

Appellant is provided the opportunity to purge himself of his contempt by refraining from engaging in the activities prohibited.

*Crozer–Chester Medical, supra* at 5–6.

The June 26, 1986 Order appealed from, in its entirety, provides as follows:

## ORDER

AND NOW this 26th day of June, 1986 after hearing in Open Court, it is ADJUDGED and DECREED as follows:

1. By entering the private property of plaintiffs on April 29, 1986 defendant Moran has violated the Courts prior decrees, and *pursuant to the Adjudication of Civil Contempt Order, of February 6, 1986, defendant Moran is ORDERED to make immediate payment of the fine of $1,500.00 by 4:00 P.M. this afternoon. If that fine is not paid, defendant is hereby SENTENCED to a term of imprisonment in the County Jail for a term of forty-five days.* He is COMMITTED to the custody of the Sheriff pending payment of the fine or for transportation to the jail. The fine, if paid, is payable to the County of Delaware.

2. By entering the private property of the plaintiffs on May 2, 1986, May 10, 1986, and May 12, 1986, and acting in a manner violative of the Courts prior Decree Nisi and Final Decree, the defendant Moran, has committed Civil Contempt of this Court, and is therefore ADJUDICATED and DECREED as being in Civil Contempt of this Court, and it is therefore ORDERED:

1. That a conditional fine of $1,500.00 for each of the three violations, a total of $4,500.00, is hereby IMPOSED upon defendant Moran. However he may purge himself of that contempt, for those individual instances, and avoid payment of the fines, by staying off the property of the Medical Center and the R.H.C.C. in accordance with the Courts decrees referred to, so long as those decrees remain in effect. Said fines, if payable, shall be payable one half to the County of Delaware and one half to the Borough of Upland.

2. If sufficient evidence is entered and brought before this Court, that the defendant has entered the property again, subsequent to the date of this Order, the Court will ORDER immediate payment of those fines and, in default thereof, defendant will be SENTENCED to a term of ninety days in the County Jail.

Future violations, if any, may also be the basis for a new petition or petitions for contempt. And, if further petitions are required, or are filed, the Court will then entertain a request, at that time, for any counsel fees and costs incurred by the plaintiffs for those petitions. For this proceeding each party will pay its own counsel fees and costs.

This Order shall remain in effect until further Order of this Court. (Emphasis added).

The portion of the Order directing either the payment of the $1,500 fine or imprisonment was merely the imposition of the previously determined penalty for contempt as appellant had violated the condition by engaging in the prohibited activities. This was not a new penalty or a penalty for past actions, but rather enforcement of an earlier adjudication of contempt which was triggered when appellant violated the purging condition by going upon the prohibited property.

No other reasonable means is available to the court to maintain the peace and to protect persons in the free enjoyment and use of their property guaranteed by the constitution, federal and state, against persistent and chronic harassment. To require new and additional trials on already adjudicated violations, is a wasteful and improper use of judicial resources.

Appellant argues that since he could not purge himself of the fine for contempt, he was subject to a criminal contempt penalty. He misses the point by construing the fine as the purge to avoid jail. The fine, in fact, is an alternative to jail because the contemnor failed to purge himself of the contempt by avoiding the prohibited acts. Were we to follow appellant's reasoning, a civil contempt Order could only be enforced via a criminal contempt Order which would necessitate a jury trial. It would take little imagination on the part of activists such as these to force every case to a criminal type jury trial by assuring that the protesters manning the front line were impecunious and, therefore, unable to pay the fine. If the civil contempt Order is to have any meaning whatsoever, enforcement must be possi-

ble. The fine or term of imprisonment appellant now faces was imposed *conditionally*. Appellant could have avoided the penalties if he had abided by the terms of the injunction. Appellant's approach would require no less than three trials in any civil contempt action: the first to establish the existence of the prohibited behavior and to establish sanctions; a second to determine if the behavior continued and the sanctions could be imposed; and a third, criminal in nature, which would determine before a jury, if requested, whether sanctions could be imposed and then only in the amount of $100 or fifteen days in jail. Such a holding in this type of case emasculates the concept of civil contempt, embroils the court and the victims in the endless litigation fostered by the contemnors and achieves the result they desire—disruption of the program under attack and constant media coverage. No matter how worthy the cause, the orderly conduct of society, pursuant to the rule of law, cannot be sacrificed in that fashion. Since appellant failed to purge himself of the contempt, the previously imposed sanctions may now be enforced.

We find appellant is not entitled to a jury trial on the contempt proceedings as they were civil in nature. The Order from which appellant appeals is simply an Order enforcing a previously entered civil contempt finding.

Order affirmed.

CIRILLO, President Judge, dissents.

CIRILLO, President Judge, dissenting:

I respectfully dissent.

The portion of the order appealed from, which was dated June 26, 1986, required appellant Moran

to make immediate payment of the fine of $1,500.00 by 4:00 p.m. this afternoon. If that fine is not paid, defendant [Moran] is hereby SENTENCED to a term of imprisonment in the County jail for a term of forty-five days. He is COMMITTED to the custody of the Sheriff pending payment of the fine or for transportation to the jail.

The two reasons given for the above penalty were Moran's violation of prior decrees prohibiting him from entering the private property of appellees as well as violation of a contempt order issued in February of 1986. The February order also imposed a $1,500 fine; however, that fine was conditional upon Moran's compliance with prior decrees barring him from the private property of Crozer–Chester Medical Center (CCMC) and Reproductive Health and Counseling Center (RHCC). The fine imposed in that portion of the June order now appealed from is not conditional. Therein lies the focus of our review.[1] The categorization and characterization of a contempt order as conditional or unconditional plays a critical role in our determination of whether Moran was subject to civil contempt or criminal contempt.

CCMC and RHCC argue that the portion of the order appealed from which imposed an unconditional fine was in the nature of a civil contempt penalty. Moran, however, argues that by not placing conditions on payment of the fine, he was subject to penalties for criminal contempt and, therefore, the requirements of 42 Pa.C.S. § 4136 apply. I agree, and for that reason dissent.

Section 4136 provides that if a person is charged with indirect criminal contempt for a violation of an injunction issued by a court, he shall enjoy among other rights, the right to a speedy and public trial by an impartial jury. As we mentioned earlier, one of the reasons that Moran was held in contempt was due to his violation of a court decree enjoining him from appellees' private property. Section 4136 also limits penalties for indirect criminal contempt to $100 or 15 days in jail. Various exceptions, inapposite here, are made for direct criminal contempt, which involves contumacious acts committed in the presence of the court.

The Pennsylvania Supreme Court has comprehensively explained the difference between civil and criminal con-

---

1. Moran does not contest a second conditional fine imposed in the same order from which he now appeals. He concedes that the imposition of such a conditional fine is the appropriate form of penalty for civil contempt.

tempt in the case of *In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975). The supreme court held in *Martorano* that there is nothing inherent in a particular act which classifies it as civil or criminal contempt. Rather, the distinction between civil and criminal contempt is determined by the dominant purpose of the judicial response to contumacious behavior. *Id.*, 464 Pa. at 77–78, 346 A.2d at 27–28. If the dominant purpose of the court is to prospectively coerce the contemnor to comply with an order of the court, the contempt is civil. If, however, "the dominant purpose of the court is to punish the contemnor for disobedience of the court's order ..., the adjudication of contempt is criminal." *Id.*, 464 Pa. at 78, 346 A.2d at 28.

When the court's dominant purpose is to coerce, the appropriate civil contempt penalty is "a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order, while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance." *Id.*, 464 Pa. at 79, 346 A.2d at 28 (citing *Shillitani v. United States*, 384 U.S. 364, 368–70, 86 S.Ct. 1531, 1534–35, 16 L.Ed.2d 622 (1966)). The *Martorano* court then noted that the distinction between civil and criminal contempt exists solely to determine what procedural rights the contemnor has and what penalties are available for the court to impose. The court found that "a contemnor who will be sentenced to a determinate term of imprisonment or a fixed fine, which he is powerless to escape by purging himself of his contempt, is entitled to the essential procedural safeguards that attend criminal proceedings generally." *Martorano*, 464 Pa. at 80, 346 A.2d at 29.

Cases decided subsequent to *Martorano* have considered the dichotomy between civil and criminal contempt. In *Bruzzi v. Bruzzi*, 332 Pa.Super. 346, 481 A.2d 648 (1984), we ruled that the label of civil contempt was inappropriate where, as here, the court was punishing the contemnor for past acts of misbehavior as opposed to conditioning punitive measures on failure to comply with court orders. *Id.*, 332

Pa.Superior Ct. at 353, 481 A.2d at 651. We recognized that a distinguishing characteristic of a civil contempt order is that, due to its coercive nature, the contemnor holds "the key to the jailhouse door," through which he may exit if he complies with the conditions of the order. *Id.*, 332 Pa.Superior Ct. at 353, 481 A.2d at 652.

We did not accept in *Bruzzi* the argument that a contempt order should be described as civil because the court's dominant purpose allegedly was to coerce compliance with an earlier custody order. We reasoned that the incarceration imposed in that case would not have been affected by the appellant's strict compliance in the future with the terms of the custody order, and, therefore, the unconditional penalty for contempt was criminal in nature. *Id.*, 332 Pa.Superior Ct. at 354 n. 5, 481 A.2d at 652 n. 5. That same reasoning applied to the appeal before us would also lead us to categorize the unconditional fine imposed on Moran as criminal in nature because it could not be purged by his future compliance with the court's order. Moran was given no key to the jailhouse door.

The reasoning in *Bruzzi* seems to be at odds with the earlier case of *Rouse Philadelphia Inc. v. Ad Hoc '78*, 274 Pa.Super. 54, 417 A.2d 1248 (1979). In that case, we held that a fine of $5,000, payable to the City of Philadelphia within six months, was properly described as a penalty for civil contempt. The *Rouse* case involved the failure to comply with a prior court order prohibiting appellant and his many cohorts from picketing and preventing ingress and egress from the stores in a downtown shopping mall. The court in *Rouse* did not cite authority to support its reasoning that an unconditional fine could be an appropriate penalty for civil contempt. *Rouse*, 274 Pa.Super. at 72–73, 417 A.2d at 1258–59. The *Rouse* Court did not attempt to reconcile its reasoning on this point with the well-settled principles expressed in *Martorano*.

*Rouse*, however, may be explained and distinguished based on the particular facts involved in that case. A panel of this court in *Rouse* was preoccupied with the cost of

more than $1,400,000 which the City of Philadelphia incurred in attempting to ensure compliance with the court's order by appellant and his numerous fellow demonstrators. This amount included $400,000 in overtime for police and sheriff's deputies. *Id.*, 274 Pa.Superior Ct. at 73, 417 A.2d at 1258. *Rouse* should be confined to its extraordinary facts. *Bruzzi* is consistent with the comprehensive treatment of this issue by the Pennsylvania Supreme Court in *Martorano*, and its progeny, *see, e.g., In Re B*, 482 Pa. 471, 477, 394 A.2d 419, 421 (1978) (penalty for contempt was criminal in nature where appellant was powerless to purge himself of contempt by compliance with court's order); *Barrett v. Barrett*, 470 Pa. 253, 262, 368 A.2d 616, 620 (1977) (crucial question to determine civil contempt is whether one has present ability to comply with conditions set by court to purge himself of contempt) and should be followed here.

In *Schnabel Assoc., Inc. v. Building and Constr. Trades Council*, 338 Pa.Super. 376, 487 A.2d 1327 (1985) this court listed five factors whose presence often indicate civil contempt. Civil contempt is likely to be found: (1) where the complainant is a private person as opposed to the government; (2) where the proceeding is a continuation of an original injunction as opposed to a separate and independent action; (3) where holding the defendant in contempt provides relief to a private party; (4) where the complainant primarily benefits from the relief requested; and (5) "where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion." *Id.*, 338 Pa.Superior Ct. at 386, 487 A.2d at 1332–1333 (quoting *Knaus v. Knaus*, 387 Pa. 370, 378, 127 A.2d 669, 673 (1956)). The existence of these factors, however, is not dispositive of the issue. Rather, we must recognize that " 'even where the same facts might give rise to criminal as well as civil contempt, each has its own distinct procedures and confers distinct procedural rights; the two may not be casually commingled.' " *Id.* 338 Pa.Super at 386, 487 A.2d at 1333 (quoting

*Barrett v. Barrett,* 470 Pa. 253, 260, 368 A.2d 616, 619 (1977)).

Further, the *Schnabel* court emphasized that the prohibition against obfuscating the distinction between civil and criminal contempt seeks to prevent the imposition of criminal contempt penalties without affording criminal procedural rights and safeguards. *Id.* 338 Pa.Super. at 390, 487 A.2d at 1335. In the appeal before us, even though it may be argued that the same facts might initially have given rise to either criminal or civil contempt, we should be meticulous in enforcing the different rights that attend the separate categorization of the two proceedings.

The authority that I have analyzed firmly supports my conclusion. An unconditional fine was imposed on Moran of which he was unable to purge himself by compliance with the court's order. Where, as here, the dominant purpose of the trial court is to impose an unconditional punishment for past misbehavior, the appropriate label is criminal contempt and one must be afforded the rights that attend criminal proceedings generally. Therefore, because Moran was not afforded the rights that must attend a criminal contempt proceeding, I would reverse and remand.