J-A10020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BETTE HAYMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JACK HAYMAN | : | No. 2453 EDA 2019 |

Appeal from the Order Entered May 14, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 06-09596

BEFORE:   BOWES, J., SHOGAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SHOGAN, J.:                         Filed October 8, 2020

Appellant, Bette Hayman ("Wife"), appeals from a contempt order imposing sanctions in the form of dismissal of her petition for special relief, which she had filed against Appellee, Jack Hayman ("Husband").[1]  We reverse.

The trial court summarized the history as follows:

The parties married in October 1993, separated in March 2006 and divorced in August 2009.  The divorce included a property settlement agreement.  The parties since have returned to court numerous times for a dispute over the entry of a Qualified

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  While the parties divorced in 2009, for ease, we refer to them as Husband and Wife.

Domestic Relations Order [("QDRO")[2]] involving [H]usband's Hayman-Carpenter Assocs. Inc. 401(k) profit sharing plan ("pension"). Relevantly, the Honorable Rhonda Lee Daniele[1] issued an Order dated February 28, 2017, appointing Pension Analysis Consultants ("PAC") to update an evaluation of [Husband's] pension and the parties' QDRO. The parties subsequently filed petitions for contempt.

> [1] Judge Daniele moved to senior judge status in 2019 and this case was administratively reassigned to the undersigned [the Honorable Gary S. Silow].

Judge Daniele held hearings on the petitions and issued an Order dated July 24, 2018, granting [Wife] time to seek additional information and to file a petition for special relief, if she so chose, after receiving the information. [Wife] subsequently filed a petition for special relief on September 7, 2018, claiming she had learned of documents that [Husband] allegedly had withheld from her and that had not been provided to PAC in order to develop a QDRO.

The petition for special relief proceeded to a hearing before Judge Daniele on November 30, 2018. After a series of objections by [Husband's] counsel during direct examination of [Wife], and Judge Daniele learning that [Wife] had turned over a new expert report to [Husband] the day before the hearing, Judge Daniele terminated the proceeding, leaving it to be heard by the undersigned in the new year.

The undersigned scheduled a hearing on the petition for special relief for March 5, 2019. The parties appeared[,] but the hearing was continued because [Wife] had not been able to secure the attendance of Mark Altschuler from PAC. During the proceeding, however, this court issued an oral order directing [Wife] to pay her outstanding portion of Altschuler's fees and making her responsible for all of his fees moving forward. (N.T., 3/5/19, p. 10)[.] This court also ordered [W]ife, within five days, to provide proof to the court, filed of record, of her having paid

---

[2] "A QDRO . . . is a domestic relations order which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under the [pension] plan." *Morgante v. Morgante*, 119 A.3d 382, 395 n.11 (Pa. Super. 2015).

- 2 -

her portion of the outstanding fees. *Id*. This court cautioned [Wife] that a failure to provide proof of payment would result in the court *sua sponte* dismissing her petition for special relief. *Id*.

Five days passed without proof of payment being filed[,] and this court, on its own initiative, held a teleconference with counsel for the parties on March 13, 2019. During the call, [Wife's] counsel claimed confusion with this court's oral order. As an accommodation, this court allowed [Wife] an additional day to give the check to [Husband] and to file a certificate of payment. Counsel agreed the amount [Wife] owed [Husband] in connection with her outstanding portion of the PAC fees was [$]4,600.

Later that day, [Wife's] counsel delivered to [Husband's] counsel a personal check in the amount of $4,600, payable from a Bank of America account held in [Wife's] name. The check was dated March 8, 2019. [Wife's] counsel also filed that day a certification of payment.

Believing the payment issue had been resolved, this court rescheduled the hearing on [Wife's] petition for special relief. In the interim, the check from [Wife] was dishonored, [because it was allegedly inadvertently] written on a closed account.

This court learned of the dishonored check through the filing of a petition for contempt by [Husband] on March 25, 2019. He acknowledged that [Wife] had delivered a check to his counsel, but alleged that a week later he received notice that the check was not payable because it was made on an account that had been closed. [Wife] filed an answer, new matter[,] and counterclaim.[2] She and her attorney also filed separate supporting affidavits.

> [2] [Wife] claims the first she learned of the closed account was when she received [Husband's] petition for contempt. She subsequently provided [Husband] with a different check[,] and it appears the new check was honored.

This court consolidated [Wife's] petition for special relief and [Husband's] petition for contempt for a hearing on May 2, 2019. At the hearing, [Wife] and her attorney testified on the issue of the contempt petition. The matter was taken under advisement[,] and this court issued an Order dated May 14, 2019, granting [Husband's] petition to the extent that it dismissed [Wife's]

- 3 -

petition for special relief. The Order also directed the parties to file and serve a proposed QDRO based on the record as it existed prior to [Wife] filing her petition for special relief.

[Wife] filed an emergency petition for reconsideration on May 24, 2019.[3] This court granted reconsideration and ordered [Husband] to file a response. After considering the emergency petition and [Husband's] response, this court denied [Wife's] petition in an Order dated July 23, 2019, and gave [Wife] 30 days to file her proposed QDRO.[4] [Wife] retained new counsel and filed a . . . notice of appeal.

[3] [Wife] also filed an emergency petition for stay pending appeal, which this court dismissed as moot because it had granted reconsideration.

[4] [Husband] already had filed his proposed QDRO.

Trial Court Opinion, 10/1/19, at 1–4. Wife filed her notice of appeal on August 1, 2019. Both the trial court and Wife complied with Pa.R.A.P. 1925.

We first address the timeliness and appealability of the order appealed. By way of background, on September 12, 2019, before this case was assigned to a panel, this Court entered a *Per Curiam* order directing Wife to show cause as to the finality and appealability of both the contempt and special relief portions of the order appealed. Order, 9/12/19. Wife filed a response on September 23, 2019, and we entered an order on September 24, 2019, discharging the show-cause order and advising that the panel may revisit the jurisdictional issue. Order, 9/24/19.

Husband, in his brief, has renewed his claim that the appeal should be quashed. Husband's Brief at 12, 16–22. For the following reasons, we disagree. The appealed contempt order was entered May 14, 2019. On May

24, 2019, the trial court granted Wife's timely emergency petition for reconsideration, stayed the May 14, 2019 contempt order, and ordered Husband to file a response. Order, 5/24/19. The filing of a reconsideration motion "neither extends, nor tolls the appeal statute" unless, as here, a stay is granted. ***Blackburn v. King Investment Group, LLC***, 162 A.3d 461, 464 n.5 (Pa. Super. 2017).

Pennsylvania Rule of Civil Procedure 1930.2, "No Post-Trial Practice; Motions for Reconsideration," is relevant herein. Pa.R.C.P. 1930.2(b) provides that a party aggrieved by the decision of the court may file a motion for reconsideration, and it incorporates the timeliness requirements within Pa.R.A.P. 1701(b)(3), as follows:

> Rule 1701(b)(3) provides that after an appeal is filed, the trial court may:
>
> grant reconsideration of the order which is the subject of the appeal ... if:
>
>> (i) an application for reconsideration of the order is filed in the trial court ... within the time provided or prescribed by law; and
>>
>> (ii) an order expressly granting reconsideration of such prior order is filed in the trial court ... within the time prescribed by these rules for the filing of a notice of appeal ... or within any shorter time provided or prescribed by law for the granting of reconsideration.
>
> … Where a timely order of reconsideration is entered under this paragraph, the time for filing a notice of appeal … begins to run anew after the entry of the decision on reconsideration, whether or not that decision amounts to a reaffirmation of the prior determination of the trial court.

*Dumas v. Brooks*, 201 A.3d 1273, 1275–1276 (Pa. Super. 2018) (footnote omitted) (quoting Pa.R.A.P. 1701(b)(3)). "The reconsidered decision, except as set forth in subdivision (e), shall be rendered within 120 days of the date the motion for reconsideration is granted." Pa.R.C.P. 1930.2(c). "[T]he time for filing a notice of appeal will begin to run anew from the date of entry of the reconsidered decision. . . ." Pa.R.A.P. 1930(d).

Here, the trial court did grant reconsideration and a stay within the time permitted and did take further action on July 23, 2019, which was within the ensuing 120 days. Thus, the appeal period began to run anew from July 23, 2019. Therefore, the notice of appeal filed August 1, 2019, was timely. Pa.R.C.P. 1930.2; Pa.R.A.P. 1701 and 903 ("Time for Appeal").

Husband also contends the denial of Wife's Petition for Special Relief was "an evidentiary ruling and not an appealable order." Husband's Brief at 17. In this regard, he maintains the May 14, 2019 order appealed was not an appealable order. *Id.* at 21–22.

In its Pa.R.A.P. 1925(a) opinion, the trial court opined that the instant appeal "may have been improperly brought at this time because the decision to dismiss the petition did not finally decide this matter." Trial Court Opinion, 10/1/19, at 6 (citing Pa.R.A.P. 341(b)(1)). The trial court asserted that the Petition for Special Relief sought to introduce additional evidence in connection with the parties' dispute over the entry of a QDRO, and that dispute "remains pending and the striking of [Wife's] petition for special relief does not place

her out of court." *Id.* The trial court posits that the case should proceed "to the entry of a QDRO and, should [Wife] then wish to appeal, she may do so while also challenging this court's dismissal of her petition for special relief." *Id.*

Prior to imposition of sanctions, an order finding a defendant in contempt is interlocutory. *Rhoades v. Pryce*, 874 A.2d 148, 151-153 (Pa. Super. 2005) (*en banc*). Once the court imposes sanctions, however, the previously interlocutory order is final and appealable. *N.A.M. v. M.P.W.*, 168 A.3d 256, 260 (Pa. Super. 2017).

We agree with Wife that the order entered on May 14, 2019, included a present finding of contempt and further, imposed sanctions in the form of dismissal of Wife's Petition for Special Relief. *In re K.K.*, 957 A.2d 298, 303 (Pa. Super. 2008) (order of contempt was final and appealable because it contained a present finding of contempt and imposed sanctions). While Judge Daniele invited Wife to file a petition for special relief to raise her objections to the pension valuation that was before the trial court, the May 14, 2019 order denied Wife that opportunity. Because the court dismissed the special-relief petition as a sanction, it did not consider Wife's special-relief petition on the merits. The order at issue is properly before us. *In re C.W.*, 960 A.2d 458, 460 (Pa. Super. 2008).

Appellant raises the following issues on appeal:

1. Did the trial court err as a matter of law and apply the incorrect burden of proof when it mischaracterized its contempt order as an

- 7 -

order for civil contempt rather than indirect criminal contempt, where the sanction imposed was punitive rather than coercive and compensatory, and the sanctions order did not include a purge condition?

2. Did the trial court err as a matter of law or abuse its discretion when it imposed civil contempt sanctions where the order alleged to have been violated was not "definite, clear, and specific," Wife's unrebutted testimony revealed that she did not intend to violate the court's bench order, and Wife immediately cured the alleged contempt?

Wife's Brief at 6. We address the issues in tandem.

Each court is the exclusive judge of contempts against its process, and we will reverse an order of contempt "only upon a showing of a plain abuse of discretion." *In re Contempt of Cullen*, 849 A.2d 1207, 1210 (Pa. Super. 2004) (citation omitted); *Lachat v. Hinchcliffe*, 769 A.2d 481, 487 (Pa. Super. 2001). "[A]n appellate court has the authority to determine whether the findings of the trial court support its legal conclusions, but may only interfere with those conclusions if they are unreasonable in light of the trial court's factual findings." *Sutch v. Roxborough Mem'l Hosp.*, 142 A.3d 38, 67 (Pa. Super. 2016) (citation omitted).

Wife maintains that the trial court's sanctions were criminal rather than civil-contempt sanctions because their dominant purpose was to punish Wife rather than compensate Husband. Wife's Brief at 28. Wife suggests that although the trial court classified its dismissal of her petition for special relief as a civil sanction, the court's order does not seek to compel her to comply with the prior order requiring the payment of expert fees. Wife's Brief at 31.

Wife points out that when the trial court entered the May 14, 2019 order, Wife "had already paid Husband in full." *Id.*

Wife further submits that the sanction order was not compensatory. Wife's Brief at 31. She contends that "although Husband's petition sought an award of attorneys' fees, the court did not award attorneys' fees but instead[,] dismissed Wife's petition for special relief." *Id.* at 31–32. Wife cites this as support that the order was punitive rather than coercive. *Id.* at 32.

Wife suggests that the trial court's confusion between civil and criminal contempt caused it to apply the incorrect burden of proof, which she maintains requires reversal. Wife's Brief at 36. Wife avers that although the March 5, 2019 order[3] required Wife to pay her outstanding portion of Mr. Altschuler's fees, it did "not state the dollar amount to be paid. Nor [did] it identify to whom the fees should be paid—Mr. Altschuler (PAC) or [Husband]. (R. 99a, 191a.)." Wife's Brief at 41. Thus, Wife suggests the order does not meet the

---

[3] The March 5, 2019 order provided as follows:

> Regarding [Wife's] petition for special relief, at which time [Wife] will produce Mark Altschuler as her witness. Wife shall pay her outstanding portion of his fees, and is solely responsible for his fees going forward.

> Within five days from today, Wife shall provide proof to the [c]ourt, filed of record, of having paid her outstanding portion of Mr. Altschuler's fees. Failure to file proof of payment shall result in the [c]ourt *sua sponte* dismissing your petition.

Order, 3/5/19, at 1; N.T., 3/5/19, at 2.

requirement that it be "definite, clear, and specific." ***Id.*** Wife further contends that there was confusion regarding the amount Husband had paid PAC. Wife's Brief at 42–43. Because Wife argues that Husband failed to sustain his burden of proof that the March 5, 2019 order was definite, clear, and specific, she maintains that the trial court erred when it held her in contempt. ***Id.*** at 45.

Finally, Wife asserts that Husband failed to sustain his burden of proving that Wife intended to violate the March 5th order. Wife's Brief at 46. Wife avers that evidence of wrongful intent is a prerequisite to the imposition of contempt sanctions. ***Id.*** at 52 (citing ***MacDougall v. MacDougall***, 49 A3d 890, 892 (Pa. Super. 2012)). She posits that the record does not support such a conclusion.

Husband responds that the trial court properly entered civil sanctions against Wife. Husband's Brief at 22. He argues the order was not punitive; rather, Husband suggests the trial court merely ordered Wife to pay her outstanding portion of the Altschuler expert fees "and was solely responsible for the expert's fees going forward." ***Id.*** at 22–23.

Husband avers that Wife was on notice of her noncompliance of the order requiring her payment of the expert's fees. Husband's Brief at 31. Once the trial court found civil contempt, Husband maintains it can impose sanctions, and here, the sanction was not disproportionate to Wife's acts. ***Id.*** at 32.

Husband also avers that Wife was not confused—she admitted that she understood her obligation to deliver a check for the PAC expert to Husband. Husband's Brief at 33. Husband asserts that he met his burden of proof with clear evidence that Wife violated court orders and that special relief was not warranted. *Id.* at 37. Husband maintains that Wife failed to comply with the trial court's orders, "despite being cautioned that failure to do so would result in the dismissal of her petition." *Id.*

The trial court, in an alternative to its suggestion of quashal of the appeal, stated the following:

> Here, [Wife] and her attorney were present when this court issued its oral order and [Wife's] counsel participated in the conference call that granted an extension. [Wife] also filed a written response to [Husband's] contempt petition[,] and she and her attorney participated at the subsequent hearing. [Wife], therefore, did not suffer a due process violation in connection with the dismissal of her petition for special relief.

Trial Court Opinion, 10/1/19, at 7. The trial court did not address Wife's contention that the May 14, 2019 order held Wife in indirect criminal contempt, nor did it deny that the dismissal of Wife's Petition for Special Relief was a sanction for its finding of contempt. Trial Court Opinion, 10/1/19, at 1–9.

We conclude that the instant order held Wife in indirect criminal contempt and the contempt finding is not supported in the record. We have stated:

> The factors generally said to point to a civil contempt are these: (1) where the complainant is a private person as opposed to the

government or a governmental agency; (2) where the proceeding is entitled (captioned) in the original...action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the respondent in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in nature and do not of themselves constitute crimes or conduct by the respondent so contumelious that the court is impelled to act on its own motion.

*Stahl v. Redcay*, 897 A.2d 478, 486 (Pa. Super. 2006).

Alternatively, indirect criminal contempt:

consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court. *Commonwealth v. Padilla*, 2005 PA Super 332, 885 A.2d 994 (Pa. Super. 2005). . . . To establish indirect criminal contempt, [it] must [be] prove[n]: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 110 (Pa. Super. 2007).

"The distinction between criminal and civil contempt is … a distinction between two permissible judicial responses to contumacious behavior." *Lachat*, 769 A.2d at 488. The characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of contempt by complying with the court's directive. *Interest of E.O.*, 195 A.3d 583, 587 n.7 (Pa. Super. 2018). If the purpose of the order is to punish despite an opportunity to purge, the order is criminal in nature. *Id.* (citing *Sinaiko v. Sinaiko*, 664 A.2d 1005, 1009 (Pa. Super. 1995)). Thus, "criminal contempt is of a punitive character." *Bruzzi v. Bruzzi*, 481 A.2d 648, 651 (Pa. Super.

1984). Here, the trial court was punishing Wife for her alleged act of noncompliance. "A civil label is inappropriate when the court is attempting to punish the contemnor for past acts of misbehavior . . . ." *Id*. The above factors point to classifying the instant contempt as indirect criminal contempt. We have stated, moreover, that "the same facts or conduct may constitute or amount to both civil and criminal contempt." *Stahl*, 897 A.2d at 486. Further, both civil and criminal contempt require proof of the distinct elements of clarity of order, notice, volition, and intent.

We look first to the language of the order allegedly violated to determine whether it was sufficiently definite, clear, and specific, such that Wife had no doubt of the conduct prohibited. As noted *supra*, the March 5, 2019 order required Wife to pay her outstanding portion of Mr. Altschuler's fees, but it did not state the dollar amount to be paid, nor did it identify to whom the fees should be paid—Mr. Altschuler (PAC) or Husband. Order, 3/5/19.

Evidence admitted at the May 2, 2019 hearing, including the affidavits of Wife, her counsel, and Wife's testimony, established that confusion existed regarding the amount Husband had paid PAC. N.T., 5/2/19, at 54. The nebulous and indefinite March 5, 2019 order, which lacked the amount of fees Wife was to pay and to whom, resulted in confusion. During questioning by Husband's counsel, Wife testified:

A. So I was ordered to pay Mr. Altschuler's outstanding fees, which is what I did.

Q. Okay. You didn't pay them to [Husband], did you?

A. It doesn't say I have to pay them to Mr. Hayman.   It says I have to pay outstanding fees.

Q.  Okay. And so within five days of the order, what did you pay Mr. Altschuler?

A.  I don't recall what the amount was.  But we had asked for proof of payment and we had a difficult time getting it.

And we also had a difficult time getting the court transcript because there was an illness in the court system, the person who provides that. So there was a delay.

And we also asked your—asked [Husband] for proof of payment.  And there was no response on that.

And then we asked PAC for the proof of payment.  And there was a delay on that because somebody was out on vacation.

*Id.* at 49.   Due to the uncertainty regarding the amount to be paid, Wife's counsel attempted to obtain a transcript of the March, 2019 hearing.  There were a series of emails between Wife's counsel and the court reporter, who was unable to timely provide a transcript due to an illness in the reporter's family.  *Id.*   Clearly, the order was not the model of clarity, and it does not meet the requirement that it be "definite, clear, and specific."  *Sutch*, 142 A.3d at 67–68.

Further, any violation of the relevant order was not intentional.  This conclusion relates to the requirement that the contemnor must have acted with wrongful intent.  *Brumbaugh*, 932 A.2d at 110.  "[W]hen making a determination regarding whether a defendant acted with wrongful intent, the court should use common sense and consider context . . . ."  *Commonwealth*

*v. Reese*, 156 A.3d 1250, 1258 (Pa. Super. 2017); *see also Commonwealth v. Haigh*, 874 A.2d 1174, 1177 (Pa. Super. 2005) (Trial courts must "use common sense and consider the context and surrounding factors in making their determinations of whether a violation of court order is truly *intentional* before imposing sanctions of criminal contempt.") (emphasis in original).

Wife's uncontroverted testimony reveals that a combination of mishaps caused the check to be written on the wrong account. Three days after the March 2019 hearing, Wife delivered the check to her attorney on March 8, 2019. N.T., 5/2/19, at 56. Wife testified that the account from which the check was written was closed, "unbeknownst to [her]." *Id.* at 61. Wife testified that she had two checking accounts:

> One with checks that I write occasionally. Less than six a year. Probably closer to three. And I have another checking account that I pay all my bills through electronically. I have no checks for that account, never had checks, never wrote a check from that other account. It is all eBill pay.

*Id.* at 62. Wife agreed with counsel for Husband that she intended "to write a check on an account relying upon [her] belief that overdraft protection would somehow take money from [her] other account[] to cover the check that [she] wrote to [Husband]." *Id.* at 65. Wife testified that she did not know the account had been closed until she received Husband's petition for contempt. *Id.* at 89. Wife immediately telephoned customer service for the Bank of America and was told the account had been closed. *Id.* at 105, Affidavit of

Bette Hayman, ¶ 19. The bank admitted closing the account six days before Wife wrote the check and admitted that "no notice of closure was mailed, emailed, nor was an alert sent to" Wife's cellular telephone of to her "Bank of America App." *Id.* The next day, Wife personally delivered a replacement check to Husband's counsel. *Id.* at ¶ 20.

Evidence of wrongful intent is an essential element of indirect criminal contempt. *Commonwealth v. Taylor*, 137 A.3d 611, 615 (Pa. Super. 2016). In addition, the violation of the order "must have been volitional." *Id.* Instantly, the lack of a clear, definite, and specific order, combined with the absence of volitional conduct and wrongful intent as supported in the record, compel our conclusion that the trial court abused its discretion and the finding of contempt must be reversed. Because we have determined that the contempt order cannot stand, we need not evaluate whether dismissal of the Petition for Special Relief was an appropriate sanction.

The order of indirect criminal contempt is reversed, and Wife's Petition for Special Relief, therefore, is reinstated. Thus, we remand the matter to the trial court for proceedings consistent with this memorandum.

May 14, 2019 order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/8/20