560 A.2d 133

**CROZER–CHESTER MEDICAL CENTER and Reproductive Health and Counseling Center, Appellees,**

v.

**Robert E. MORAN, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 19, 1989.

Decided June 9, 1989.

Joseph D. Branca, Aston, for appellant.

Donald T. Petrosa, Media, for Crozer–Chester.

Murray S. Eckell, Donald A. Browns, Media, for Reproductive Health.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

McDERMOTT, Justice.

Mr. Moran appeals from an order of the Superior Court affirming an order of the Court of Common Pleas of Dela-

ware County which imposed a fine of $1500.00 or a term of imprisonment of forty-five (45) days in the county jail on his conviction for contempt. *Crozer–Chester Medical Center v. Moran*, 368 Pa.Super. 243, 533 A.2d 1045 (1987). The salient facts are set forth below.

Appellees, Crozer–Chester Medical Center and Reproductive And Counseling Center, are a private hospital and clinic which lease hospital facilities where they perform abortions. Mr. Moran is one of a group who have conducted or taken part in anti-abortion protests and demonstrations on Appellees' property. The present appeal obtains in the court's response to these events.

On February 10, 1984, in a decree *nisi*, Mr. Moran and others were enjoined from going on to Appellees' property and from engaging in specific conduct thereon, as enumerated in the order, which would obstruct or interfere with Appellees' business. The order was made final in a decree of November 9, 1984, then appealed to the Superior Court and affirmed. *Crozer–Chester Medical Center v. May*, 352 Pa.Super 51, 506 A.2d 1377 (1986). This court denied allocatur. 408 E.D.Alloc. Dkt. 1986 (Dec. 10, 1986).

On May 7, 1985, Appellees petitioned the court for an adjudication of civil contempt against Mr. Moran and others, alleging violations of the court's February 10, 1984, injunction. By order of June 13, 1985, the court held Mr. Moran and others in contempt and imposed a conditional fine of $1000.00 or imprisonment of thirty (30) days, should any of them violate the terms of the injunction in the future.

On December 19, 1985, Appellees submitted two petitions to the court, alleging additional violations by Mr. Moran and others, and seeking additional relief.

The court found Mr. Moran in contempt of its orders of February 10, 1984, and June 13, 1985, and, by order of February 4, 1986, imposed a fine of $1000.00. Mr. Moran refused to pay the fine and served thirty (30) days in the county jail.

In addition, by order of February 6, 1986, the court adjudicated him in contempt for his most recent violations and decreed an escalated fine of $1500.00 from which he could purge himself by staying off Appellees' property in the future. The order also provided that, should he enter the property and default on the payment of the fine, he would be sentenced to forty-five (45) days in the county prison.

Mr. Moran appealed and the Superior Court quashed his appeal and affirmed the orders of the trial court in a *per curiam* order. *Crozer–Chester v. Moran*, 364 Pa.Super. 652, 525 A.2d 820 (1987) *allocatur denied*, 516 Pa. 641, 533 A.2d 712 (1987).

In the spring of 1986, Appellees repetitioned the court for an additional adjudication holding Mr. Moran in contempt and alleging that on three (3) occasions he came onto their property, handed out literature, accosted invitees with a bullhorn, harassed prospective clients, came onto the steps of their building and refused to leave, threatened to summon 700 people to take over their property and entered and attempted to entice others to enter their property.

By order of June 26, 1986, the court decreed that Mr. Moran committed civil contempt by violating its previous orders on May 2, 10 and 12, 1986. It ordered that he pay the conditional fine imposed in the order of February 6, 1986, of $1500.00, by 4:00 P.M. that day or submit to imprisonment in the county jail for forty-five (45) days. In addition, it imposed a conditional fine in the same amount for each of the three (3) violations for a total fine of $4,500.00, but again made payment contingent upon future violations of its orders. Default on the future fine would subject Mr. Moran to ninety (90) days in the county jail. Finally, the court decreed that in the event of future violations, Mr. Moran, in addition to the penalties set forth above, might also be subjected to the costs of Appellees' petitions for relief.

Mr. Moran appealed to the Superior Court. He argued that since he could not have purged himself of his past

contumacious conduct at the time of the imposition of the $1500.00 fine, he had therefore been made liable for criminal contempt without being afforded the rights and protections provided by statute.[1]

The Superior Court in an opinion by Judge Patrick Tamilia, joined by Senior Judge William Cercone, over a vigorous dissent by President Judge Vincent A. Cirillo, affirmed the order of the Court of Common Pleas. *Crozer–Chester Medical Center v. Moran*, 368 Pa.Super 243, 533 A.2d 1045 (1987). Appellant petitioned this court for leave to appeal and we granted his petition to decide whether he has been subjected to punishment for criminal contempt without being afforded the procedural protections provided by the statute.[2]

**1.** Act of July 9, 1976, P.L. 586, No. 142, section 2, *as amended.* See 42 Pa.C.S. section 4136 (Supp.1988).

**2.** The full text of 42 Pa.C.S.A. section 4136 reads as follows: *Section 4136. Rights of persons charged with certain indirect criminal contempts*

(a) General rule.—A person charged with indirect criminal contempt for violation of a restraining order or injunction issued by a court shall enjoy:

(1) The rights to bail that are accorded to persons accused of crime.

(2) The right to be notified of the accusation and a reasonable time to make a defense, if the alleged contempt is not committed in the immediate view or presence of the court.

(3)(i) Upon demand, the right to a speedy and public trial by an impartial jury of the judicial district wherein the contempt shall have been committed.

(ii) The requirement of subparagraph (i) shall not be construed to apply to contempts:

(A) committed in the presence of the court or so near thereto as to interfere directly with the administration of justice, or to apply to the misbehavior, misconduct, or disobedience of any officer of the court in respect to the writs, orders, or process of the court; or

(B) subject to 75 Pa.C.S. section 4108(c) (relating to non-injury criminal contempt proceedings).

(4) The right to file with court a demand for the withdrawal of the judge sitting in the proceeding, if the alleged contempt arises from an attack upon the character or conduct of such judge, and if the attack occurred otherwise than in open court. Upon the filing of any such demand, the judge shall thereupon proceed no further but another judge shall be designated by the court. The demand shall be filed prior to the hearing in the contempt proceeding.

(b) Punishment.—Except as otherwise provided in this title or by statute hereafter enacted, punishment for a contempt specified in

The classification of contempt has vexed our courts. A proper classification is crucial however, since upon it depends the procedures which must be followed in disposing of it. D. Dobbs, Handbook on the Law of Remedies section 2.9 (1973).

Contempt of court is the obstruction of the court's orderly process. It may be committed directly or indirectly. It is direct when committed in the court's presence and indirect when committed beyond its presence. Contempt is a generic concept, distinguished by two types, criminal and civil contempt. The difference is not of the essence, but of the purpose sought by their use. The gravemen of both is obstruction of orderly process, and each serves a different purpose for regulating obstruction.

■ Direct contempt is obstruction by conduct, word or deed in the presence of the court and is a summary offense. It may be sanctioned as civil or criminal contempt depending upon the purposes sought by the court. It is summary because its proofs are evident; the authority and orderly process of the court are directly confronted upon its open record and the evidence is plain and usually self-accusing.

■ Indirect contempt is obstructive conduct committed beyond the court's presence. Such conduct is not self-evident or self-accusatory as when one refuses in the court's presence to do a thing and proof of its commission is required. Therein lies the main difference between contempt in the court's presence and conduct beyond. When one is charged with indirect contempt those charging such contempt are put to the usual proofs required to convict for any charge, including the right to trial by jury. This is so, because the court has no direct, immediate proof of some-

subsection (a) may be by fine not exceeding $100 or by imprisonment not exceeding 15 days in the jail of the county where the court is sitting, or both, in the discretion of the court. Where a person is committed to jail for the nonpayment of such fine, he shall be discharged at the expiration of 15 days, but where he is also committed for a definite time, the 15 days shall be computed from the expiration of the definite time.

thing beyond its immediate view. *See* 42 Pa.C.S. section 4136, *supra.*

█ A finding of criminal contempt is a finding of a specific offense for which a sanction is imposed that does not seek compliance but is a specific punishment for an act done. In criminal contempt one has committed an act that in itself calls for specific sanction and when imposed cannot be obviated because it is a completed offense.

█ Civil contempt is also an available remedy for obstruction in the presence of the court and may be used to compel obedience by imposing fine or imprisonment conditioned on obedience to the court's order. The difference is best explained in Court house parlance; in civil contempt one has "the key to the jail house." That is, he may be released of sanction whenever he signals that he will obey the order.

We have said this before:

There is nothing inherent in a contemptuous act or refusal to act which classifies that act as "criminal" or "civil". The distinction between civil and criminal contempt is rather a distinction between two permissible judicial responses to contumacious behavior. For example, it is clear that a contemptuous refusal to testify before a grand jury may be dealt with either a (sic) criminal contempt, civil contempt, or both.

These judicial responses are classified according to the dominant purpose of the court. If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication of contempt is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal.

*Dominant purpose of coercion or punishment is expressed in the sanction imposed. A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve*

*himself by obeying the court's order, while a criminal
adjudication of contempt punishes with a certain term
of imprisonment or a fine which the contemnor is
powerless to escape by compliance.*

The civil-criminal classification of contempt exists sole-
ly for determination of a contemnor's procedural rights
and a court's sentencing options. Quite simply, a con-
temnor who will be sentenced to a determinate term of
imprisonment or a fixed fine, which he is powerless to
escape by purging himself of his contempt, is entitled to
the essential procedural safeguards that attend criminal
proceedings generally. Second, a court is not permitted
to impose a coercive sentence conditioned on the con-
temnor's performance of some act that is incapable of
performance.

*In re Martorano* 464 Pa. 66, 77–80, 346 A.2d 22, 27–29
(1975) .(emphasis added) (footnotes, citations omitted).

■ Criminal contempt is a crime. *Matter of Johnson,*
467 Pa. 552, 359 A.2d 739 (1976). As in the case of any
other crime, those accused of indirect criminal contempt are
provided the safeguards which statute and criminal proce-
dures afford. *Martorano;* 42 Pa.C.S. section 4136, *supra.*

■ Turning to the issue before us we note, and it is not
disputed, that the alleged contumacious conduct took place
out of the presence of the court. It was indirect. Focusing
on the nature of the penalties imposed as directed by
*Martorano,* there can be no dispute that they were determi-
nate. The order at issue imposed a fine of $1500.00 and
issued as a result of a series of contumacious acts commit-
ted earlier. It was not imposed and could not have been
imposed as a means of restraining Mr. Moran from acts
which he had already committed. So too with the sentence
of forty-five days in the county jail; there is no provision in
the order which would make the length of time to be served
at all contingent on payment of the fine at any time. Mr.
Moran's refusal to pay resulted in a sentence to a fixed
term of imprisonment.

■   The issue here is both the nature of the sanctions imposed and whether they could be imposed without the statutory safeguards of the right to trial by jury, trial upon the question of whether the court's order was in fact disobeyed. What Mr. Moran allegedly did was done beyond the immediate presence of the court. Therefore, proofs beyond the court's own immediate witness are required. When a court seeks prospective obedience, it may set the penalty if disobeyed, but whether it was in fact disobeyed is a question that can only be answered by the regular forms of proof as required by the statute.

In its opinion the Superior Court determined the contempt to have been civil, based on the fact that the sanctions were conditional, could have been avoided by conformance to their terms, and would not have been imposed but for Mr. Moran's alleged disregard and disobedience of their prohibitions. *Crozer–Chester*, 368 Pa.Super. at 249–250, 533 A.2d at 1048. But, we would point out, the fact that they were conditional is not related to their fixed aspect. We note too that as conditional punishments contingent on future violations they were remarkably similar in their anticipated effect to the injunctions contained in our criminal laws. Again like the criminal laws, the sanctions to be imposed as a result of their violation were published beforehand.

The argument that the "conditional" fine was intended to coerce the appellant into compliance with the court orders is one that has been presented and refuted by this court in *Commonwealth v. Charlett*, 481 Pa. 22, 391 A.2d 1296 (1978). In that case the trial court imposed two fines for violating its order. The first represented the minimum amount of Appellants' profits which they had realized by violating the court's earlier order. The second was to be returned after the appellants had assured the court that they had purged themselves of their contemptuous conduct. Both fines were of fixed amount. In that case we said:

... It is one thing to hold one in civil contempt in an effort to prospectively coerce that person to do some act which the person has refused to do, and it is quite another

thing to fine one for an affirmative past act that is in violation of a court decree. The trial court in this case simply made the fine conditional upon the happening of some future event, the happening of which would result in forfeiture of the fine. *In reality, therefore, the fine would have been imposed for contemptuous conduct committed prior to the fine's collection. As such, the contempt citation was criminal.*

*Id.*, 481 Pa. at 30, 391 A.2d at 1300. (emphasis added). We acknowledge that the conditional nature of the fine in this case added an element of constraint. However, in arriving at our determination of the court's dominant purpose, as we must, it is beyond cavil that the fine was of a fixed amount and imposed as a result of past violations. We cannot but infer that the proceeding was therefore criminal in nature. *Martorano, supra.* The purpose of the court to coerce compliance was ancillary and cannot work to transform the proceeding from criminal to civil. *Charlett,* 481 Pa. at 30, 391 A.2d at 1300.

Furthermore, since the contempt for which Mr. Moran was fined was a past act, the only permissible court response was punitive. *See Martorano,* 464 Pa. at 80 n. 19, 346 A.2d at 29 n. 19. For these reasons we are constrained to conclude that Mr. Moran's contempt citations were not civil but criminal. The sanctions imposed by the court were improperly imposed without the safeguards of his rights which the statute affords the criminal defendant. 42 Pa. C.S. section 4136.

In *Knaus v. Knaus,* 387 Pa. 370, 127 A.2d 669 (1956), this Court set out certain factors which point to civil contempt. They are:

1. Where the complainant is a private person as opposed to the government or a governmental agency;

2. Where the proceeding is entitled in the original injunction action and filed as a continuation thereof as opposed to a separate and independent action;

3. Where holding the defendant in contempt affords relief to a private party;

4. Where the relief requested is primarily for the benefit of the complainant;

5. Where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion.

*Id.*, 387 Pa. at 378, 127 A.2d at 673.

We acknowledge that here, as in *Knaus*, the procedural indicia of civil contempt are unquestionably present. Nevertheless, as was the case in *Knaus*, the punishment levied here must be disapproved because the order contains no provision which empowered Appellant to escape it once it was imposed.

As articulated in the cogent dissent by President Judge Cirillo below:

Rather, we must recognize that even where the same facts might give rise to criminal as well as civil contempt, each has its own distinct procedures and confers distinct procedural rights; the two may not be casually commingled ... The prohibition against obfuscating the distinction between civil and criminal contempt seeks to prevent the imposition of criminal contempt penalties without affording criminal procedural rights and safeguards ... We should be meticulous in enforcing the different rights that attend the separate categorization of the two proceedings.

*Crozer–Chester*, 368 Pa.Super. at 254–255, 533 A.2d at 1051 (Cirillo, P.J., dissenting) (citations omitted). Meticulous indeed; we agree.

We pause here to take cognizance of the court's reasoning below. The majority observes that the alternative to its resolution would require jury trials and other complexities incident to and attendant on the application of the process which we here find due. It voices a concern that a resolution contrary to it would embroil the court and the victims in endless litigation, result in meager sanctions, and advance the purposes of the contemnors in disrupting the

program under attack as well as attracting constant media attention.

We concede that summary processes are infinitely more efficient and less vexatious than those we today find required. We point out that this is not and may not be our first concern. Of paramount moment is rather a scrupulous regard for the very law which contemnors hold in contempt and a jealous adherence to the proper role of our courts in the constitutional scheme, which is to judge, and not to legislate or execute. We are concerned lest the contemnors seduce our courts into the latter and thereby cause those courts to merit their contempt.

The order of the Superior Court is reversed. The decree of the Court of Common Pleas of Delaware County is vacated and the case is remanded for proceedings consistent with this opinion.

STOUT, Former Justice, did not participate in the decision of this case.