No. 97-474

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

ELDON HUFFINE,
Petitioner,

v.

MONTANA SIXTH JUDICIAL DISTRICT COURT, PARK COUNTY,
Respondent.

ORIGINAL PROCEEDING: Habeas Corpus

COUNSEL OF RECORD:

For Petitioner: Eldon Huffine, Pro Se, Livingston, Montana

For Respondent: Hon. Joseph P. Mazurek, Attorney General, Helena, Montana Hon. Frank M. Davis, District Court Judge, Dillon, Montana Thomas G. Bowe, Assistant Attorney General, Helena, Montana Tara DePuy, Park County Attorney, Livingston, Montana

For Amicus: W. D. Hutchison, Agency Legal Services Bureau, Department of Justice, Helena, Montana

Submitted: August 26, 1997

Decided: October 10, 1997

Justice W. William Leaphart delivered the Opinion of the Court.

On August 14, 1997, petitioner Eldon Huffine (Huffine) filed herein a pro se petition for writ of habeas corpus, together with a writ of error, arguing that his sentence for contempt violates Montana and constitutional law. On August 26, 1997, this Court granted Huffine's petition for writ of habeas corpus and ordered his immediate release from confinement in the Park County jail. We issue this opinion to address whether the District Court erred in sentencing Huffine to a term of thirty days in jail for practicing law without a license.

Factual and Procedural Background Huffine's contempt charge arises out of events surrounding State of Montana ex rel. Department of Health and Environmental Sciences (DHES) v. Eugene Brue, an action filed in the Montana Sixth Judicial District Court, Park County. On January 5, 1995, the State filed a complaint and application for an injunction in the District Court alleging that Mr. Brue was operating an unlicensed and unshielded motor vehicle wrecking facility in Park County in violation of Montana law and DHES regulations. Mr. Brue filed a counterclaim against approximately thirty individuals, including several Justices of this Court, seeking not less than $1.5 million in damages for violations of his civil rights. Mr. Brue also named the Honorable Wm. Nels Swandal, the District Court judge who was presiding over the action, as a counterclaim defendant. Judge Swandal recused himself, and the Honorable Frank M. Davis assumed jurisdiction.

On March 14, 1995, Huffine filed in the District Court a notice of appearance as counsel for Mr. Brue and brief in support of the pleadings. Huffine advised the court that it should direct all further correspondence in the matter to him, "a private citizen having been designated to act as counsel by and for the Defendant Eugene Brue." The State filed a motion to strike the notice of appearance, arguing that Mr. Brue "is now represented by a person who is not a licensed attorney, yet who holds himself out as counsel for Defendant."

In its omnibus findings, opinion, and order issued April 26, 1995, the District Court found that Huffine is not a licensed attorney and that by filing a notice of appearance as counsel for Brue, he was practicing law without a license. The court then held that Huffine was guilty of contempt under 37-61-210, MCA (providing that practicing law without a license is contempt of court) and ordered him to appear before the court to show cause why sanctions should not be imposed. Huffine failed to appear, and in an order filed May 23, 1995, the District Court sentenced Huffine to a term of thirty days in the Park County Jail, to be suspended upon his paying a $500 fine within ten days. The District Court also issued a bench warrant for Huffine's arrest. On August 10, 1997, Huffine was arrested and confined to the Park County Jail.

On August 14, 1997, Huffine filed petitions for a writ of habeas corpus and a writ of error in this Court, asserting that 1) Judge Frank M. Davis of the Montana Sixth Judicial District Court, Park County, had been disqualified from proceeding over the matter; 2) Huffine was denied a trial by jury in violation of his constitutional rights; and 3) the court had no jurisdiction to sentence Huffine to thirty days in jail. In its response to this Court, the District Court states that under 3-1-519 and -520, MCA, it had authority to sentence Huffine to imprisonment to compel his performance of its order that he cease practicing law without a license.

Discussion Determining whether a particular contempt proceeding is criminal or civil can be difficult, as contempts are "neither wholly civil nor altogether criminal." Gompers v. Buck's Stove & Range Co. (1911), 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797, 806. Still, the classification of contempt is crucial, particularly where the contemnor is sentenced to confinement, because the classification determines the procedures that the district court must follow. See Crozer-Chester Medical Center v. Moran (Penn. 1989), 560 A.2d 133, 136 (citing Dobbs, Handbook on the Law of Remedies 2.9 (1973)). Therefore, to determine whether the District Court properly sanctioned Huffine for his contempt, this Court must first determine whether the contempt was criminal or civil. There is "nothing inherent in a contemptuous act or refusal to act which classifies that act as civil or criminal." Crozer, 560 A.2d at 136 (citing In re Martorano (1975), 346 A.2d 22, 27). Rather, it is the character and purpose of the punishment which the court chooses to impose that serves to distinguish between civil and criminal contempt. Hicks ex rel. Feiock v. Feiock (1988), 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721; Gompers, 221 U.S. at 441. If the sanction is "singularly designed and intended to force the violator's compliance with the court's order," the contempt is properly classified as civil. Harber v. Shaffer (Okla. 1988), 755 P.2d 640, 641; Gompers, 221 U.S. at 441. However, if the court's purpose is to punish the contemnor for a specific act done and to vindicate the authority of the court, the contempt is criminal. Gompers, 221 U.S. at 441.

Because a court's intent in imposing a particular sanction may be unclear, it is necessary to look to the form of the sanction to determine the purpose for which it was imposed. Gompers, 221 U.S. at 441. A sentence of confinement for a definite period is traditionally thought of as criminal; however, it is civil if the contemnor may secure his or her release by complying with conditions that are specified by the court. Hicks, 485 U.S. at 632. It is this ability to end the imprisonment that is the distinguishing factor and why it is often said that in a civil contempt, one carries the keys to the jailhouse in his own pocket. Gompers, 221 U.S. at 442; Crozer, 560 A.2d at 137. On the other hand, when "a jail sentence is imposed and the contemnor is given no opportunity in the sentencing order for immediate release by [performing] an act which is within his power to accomplish," the contempt is criminal. Hendershot v. Hendershot (W.Va. 1980), 263 S.E.2d 90, 93.

In this case, the District Court found Huffine in contempt for purporting to act on behalf of and as counsel for Mr. Brue. We agree that Huffine's practicing law without a license is contempt under 37-61-210, MCA. See also 3-1-501(f), MCA (stating that "assuming to be an officer, attorney, or counsel of a court and acting as such without authority" is contempt). Upon being adjudged guilty of contempt, a person may be fined "not exceeding $500 or he many be imprisoned not exceeding 5 days, or both." Section 3-1-519, MCA ("Punishment"). Alternatively, under 3-1-520, MCA, the contemnor may be sentenced to imprisonment to compel performance of an act which is within his power to perform.

The District Court states that it imposed this sentence "pursuant to 3-1-519 and -520, MCA, with emphasis on the 'imprisonment to compel performance provision.' " We determine, however, that the two statutes provide exclusive sanctions for contempt and may not be imposed together. If, as the District Court purports, it was seeking to compel Huffine's performance of an act, it must proceed under 3-1-520, MCA ("Imprisonment to compel performance"). Thus, we only address the legality of and

proper procedure for imposing a sentence under 3-1-520, MCA. Because the District Court did not purport to impose a sentence of confinement for a definite period not exceeding five days under 3-1-519, MCA, we need not address that statute.

The District Court sentenced Huffine to thirty days in jail or a fine of $500 to be paid within ten days of sentencing. The form of this sanction, confinement for a definite period or payment of a set fine, conflicts with the purpose the District Court sought to accomplish, compliance with its order. Section 3-1-520, MCA, states: "When the contempt consists in the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he shall have performed it. In that case, the act must be specified in the warrant of commitment." This statute envisions a sentence of imprisonment "singularly designed and intended to force the violator's compliance with the court's order." Harber, 755 P.2d at 641. Under 3-1-520, MCA, performance of the act specified by the district court in the warrant of commitment is the contemnor's key to the jailhouse.

While the sentencing order appears to provide Huffine with a key, payment of a $500 fine, this is not the type of key envisioned by the Supreme Court. See Hicks, 485 U.S. at 632. Payment of a fine is not the act which the court seeks to compel the contemnor to perform. Rather, it is an alternative sanction, one which could also be classified as criminal if the contemnor is given no opportunity to perform an act to avoid paying the fine. Hicks, 485 U.S. at 632. In this case, neither the order nor the bench warrant mention any affirmative act that Huffine could perform to cure the contempt and secure his release from jail or excuse him from paying the $500 fine. The U.S. Supreme Court has held:

> If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience.

Gompers, 441 U.S. at 442-43. See also Hicks, 485 U.S. at 632 (holding that any sentence of confinement that is for a determinate period of time is criminal); King v. King (Ala. 1955), 83 So.2d 241 (holding that when a sentence is for a definite period of time, the decree is a punishment for what has been done). Thus, while the District Court purports to have imposed this sentence to compel performance of an act, we determine that, in reality, the sentence of thirty days of confinement was to punish for past acts and, therefore, that Huffine's contempt proceeding is properly characterized as criminal.

In Montana, criminal contempt of court is proscribed at 45-7-309, MCA. Prosecution for criminal contempt must be carried out pursuant to the procedures set forth in Title 46, MCA, to ensure that criminal penalties are not imposed on someone who has not been afforded the proper protections. In this case, the District Court erred by imposing a punitive, criminal sentence on Huffine where no charges had been brought under 45-7-309, MCA, and where Huffine was not afforded the due process that he is guaranteed by the state and federal constitutions.

The power to sentence a contemnor to confinement, thus depriving him of his liberty, is one that must be exercised with the utmost of caution. First, in order to properly characterize the contempt proceeding as criminal or civil, the district court must determine the purpose (to compel performance or to punish) it seeks to further by imposition of the sanction. Then, if the court's design is to impose a coercive sentence of confinement, it may proceed under the civil provision of 3-1-520, MCA, by clearly stating in the sentencing order, an act (1) within the power of the contemnor to perform and (2) performance of which will secure his release. Only where criminal contempt charges are brought under 45-7-309, MCA, and appropriate procedures followed, may a contemnor be sentenced to confinement for a definite period. Parenthetically, we recognize that the plain language of 3-1-519, MCA, purports to allow a civil penalty of confinement for a definite term of up to five days. However, since the sentence in this case was imposed pursuant to 3-1-520, MCA, and not 3-1-519, MCA, we do not address the validity of 3-1-519 at this time.

The contempt that is the subject of this opinion is based solely on Huffine's filing of a notice of appearance as counsel for Mr. Brue on March 14, 1995. Because Huffine has served seventeen days in the Park County Jail, we hold that the contempt charge for his filing of this particular document has been purged. However, Huffine has continued to file petitions in this Court on behalf of Mr. Brue in the matter of State of Montana ex rel. DHES v. Brue. In an Order issued September 30, 1997, we denied Huffine's petition for extraordinary relief, holding that he is not a real party in interest to the action. Order of the Montana Supreme Court, No. 97-540 (September 30, 1997). We also noted that by filing documents on behalf of Brue, Huffine again engaged in the unlawful practice of law. Although we did not hold him in contempt, we ordered that if he attempts to file any more documents or motions with this Court on behalf of Brue, he will be held in contempt.

< /S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE
/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER
/S/ WILLIAM E. HUNT, SR.