**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 21 WAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered February 19, |
| | : | 2021 at No. 336 WDA 2020, |
| v. | : | affirming the Judgment of Sentence |
| | : | of the Court of Common Pleas of |
| | : | Allegheny County entered January |
| VIKTOR L. STEVENSON, | : | 31, 2020 at No. CP-02-MD- |
| | : | 0004599-2019. |
| Appellant | : | |
| | : | ARGUED:  April 12, 2022 |

**OPINION**

**CHIEF JUSTICE BAER**                                      **DECIDED: SEPTEMBER 29, 2022**

A trial court found Victor Stevenson ("Appellant") guilty of indirect criminal contempt for violating a final order issued pursuant to the Protection from Abuse ("PFA") Act, 23 Pa.C.S. §§ 6101-6122.  On appeal to the Superior Court, Appellant argued that the evidence of record was insufficient to support his conviction because the Commonwealth failed to present adequate proof that he received proper notice of the final PFA order from a member of law enforcement or a person tasked by the trial court to provide such notice.  The Superior Court rejected this argument, holding that the subject of a final PFA order must have notice of the order to be found guilty of indirect criminal contempt for violating the order but that it is unnecessary for a member of law enforcement or a person designated by the court to provide that notice.

We granted allowance of appeal to review the intermediate court's decision. For the reasons that follow, we hold that, to convict a defendant of indirect criminal contempt for violating a PFA order, the Commonwealth must demonstrate beyond a reasonable doubt that, at the time of the violation, the defendant had actual knowledge of the PFA order, regardless of how the defendant gained this knowledge. Here, the Commonwealth met that burden; accordingly, we affirm the judgment of the Superior Court.

## I. Background

On August 23, 2019, Ashley Yates ("Yates"), Appellant's former fiancé with whom he had resided, filed an *ex parte* petition seeking the issuance of a temporary PFA order against Appellant. It is undisputed that a temporary PFA order was issued and served on Appellant on that date. Appellant was advised that a hearing to adjudicate a final PFA order was scheduled for September 9, 2019. Appellant, however, failed to appear at the hearing. After the hearing, the trial court entered a final PFA order that was to be in effect until September 9, 2021. Among other things, the order directed that Appellant was evicted and excluded from Yates' home.

On September 12, 2019, Yates filed a complaint charging Appellant with indirect criminal contempt for violating the final PFA order. Appellant's non-jury trial for that charge occurred on October 25, 2019. Yates was the first witness to testify at the trial. She stated that her video cameras captured Appellant outside of her home in the early morning hours of September 12, 2019.

The only other witness to testify at Appellant's trial was Danielle Sutton ("Sutton"), Yates' cousin. Sutton testified that, at 3:30 a.m. on September 12, 2019, she was sleeping at Yates' home when she was alerted that someone was in the basement of the home. Sutton went to the basement, where she discovered Appellant. Sutton informed Appellant, "You can't be here." N.T., 10/25/2019, at 15. According to Sutton, Appellant

told her that he was leaving, and he asked her not to call the police. Sutton responded, "You cannot be here. You have a two-year violation. You cannot be here." *Id.* at 16. Appellant then left with a fan and heater. Notably, when the prosecutor directly asked Sutton whether she informed Appellant "that there was a PFA in effect," she said, "Yes . . . [a]t 3:30 in the morning." *Id.* at 17.

Sutton testified that, when she woke up the next morning, she noticed that video surveillance cameras at the home were turned up toward the ceiling. Consequently, she called the police, who came to the home and observed the cameras. Sutton informed the police of what had occurred in the early morning hours when she encountered Appellant. She also indicated that the family dog was missing. The police then left Yates' home.

Sutton further testified that, approximately 30 to 45 minutes after the police left Yates' home, Appellant walked up to the front of Yates' home with the family dog, causing Sutton to state once more that Appellant could not be there. She also informed Appellant that the police had just left and that she was going to call them again. Appellant then stated, "I don't care. [Yates] knows how I am." *Id.* at 16.

Following a bench trial, the trial court found Appellant guilty of indirect criminal contempt. On January 31, 2020, the court sentenced Appellant to six months of probation. Appellant timely filed a notice of appeal.

## II. Appeal to the Superior Court

In the Superior Court, Appellant argued that, to prove him guilty of indirect criminal contempt, the Commonwealth had to establish the following four elements beyond a reasonable doubt: "(1) the order in question must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited; (2) the contemnor must have had notice of the specific order or decree; (3) the

act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent." Appellant's Superior Court Brief at 14 (citations omitted).

Appellant averred that the Commonwealth's evidence failed to meet the second of these four elements, as it allegedly did not demonstrate that Appellant had notice of the final PFA order when he went to Yates' home on September 12, 2019. Relevant to the instant appeal, Appellant took the position that, to prove that he received notice of the final PFA order, the Commonwealth was required to demonstrate that this notice was provided to him by a member of law enforcement or by someone designated by the trial court. Because the Commonwealth did not present any such evidence at his trial, Appellant insisted that the Superior Court should reverse his sentence and conviction for indirect criminal contempt. In support of this position, Appellant relied primarily upon the Superior Court's decision in *Commonwealth v. Padilla*, 885 A.2d 994 (Pa. Super. 2005), which we now briefly summarize.

On the afternoon of November 12, 2004, Padilla's victim received an emergency PFA order stating that Padilla was to have no contact with the victim for 18 months. Approximately two days later, the victim informed the police of the PFA order and the fact that Padilla had threatened her over the phone and attempted to enter her home. When police arrived at the victim's home, she handed an officer her phone, stating that Padilla was on the line. The caller denied that he was Padilla and hung up. The officer called Padilla's cell phone number, leaving a message that the victim had obtained a PFA order against him and that he was to have no contact with her.

Soon thereafter, Padilla returned the officer's call. During that conversation, the officer again informed Padilla of the no-contact order and the consequences of violating it. However, Padilla continued to call, threaten, and harass the victim. Padilla was then

served with a copy of the order, and the calls ended. A trial court subsequently found Padilla guilty of indirect criminal contempt for violating the PFA order and sentenced him.

On appeal to the Superior Court, Padilla argued that the telephone conversation that he had with the police officer was insufficient to prove that he received notice of the PFA order. In response, the Superior Court acknowledged that, to establish that Padilla committed indirect criminal contempt, the Commonwealth had to prove beyond a reasonable doubt, *inter alia*, that Padilla had notice of the PFA order. However, discussing this Court's decision in *Commonwealth v. Stallworth*, 781 A.2d 110 (Pa. 2001), the intermediate court explained that, for purposes of the aggravating circumstance related to the death penalty found at 42 Pa.C.S. § 9711(d)(18),[1] this Court held that "a person who has killed the subject of a protective order becomes death penalty eligible by having actual notice of the order or the constructive equivalent." *Padilla*, 885 A.2d at 997. Applying that holding, the *Padilla* court concluded that "the telephone conversations during which [Padilla] was informed of the emergency order and the repercussions of violating it constitute actual notice or its equivalent even in the absence of personal service." *Id.* Notably, the intermediate court in *Padilla* found support for this conclusion in 23 Pa.C.S. § 6106(g), which concerns the service of PFA orders and specifically

---

[1] This statutory subsection explains that the following shall be an aggravating circumstance to be considered by a jury for purposes of determining whether a person convicted of first-degree murder should receive the death penalty:

> At the time of the killing the defendant was subject to a court order restricting in any way the defendant's behavior toward the victim pursuant to 23 Pa.C.S. Ch. 61 (relating to protection from abuse) or any other order of a court of common pleas or of the minor judiciary designed in whole or in part to protect the victim from the defendant.

42 Pa.C.S. § 9711(d)(18).

provides, "Failure to serve shall not stay the effect of a valid order." *Id.* (quoting 23 Pa.C.S. § 6106(g)).

Turning back to the instant matter, the Superior Court rejected Appellant's argument that the *Padilla* court held that notice of a PFA order must be provided by a member of law enforcement or a person designated by the court. In so doing, the intermediate court stated that "Pennsylvania law makes clear that the Commonwealth may establish the notice element of indirect criminal contempt with evidence showing the defendant received actual notice or possessed equivalent knowledge of a PFA order."[2] Superior Court Memorandum ("Memorandum") at 5 (citing, among other cases, *Padilla*, 885 A.2d at 997). Along these same lines, the Superior Court observed that "Pennsylvania courts have consistently held that, for purposes of proving indirect criminal contempt, verbal communications can adequately convey notice that a PFA order has been entered against the defendant and that a violation of that order places the defendant at risk of criminal sanctions." *Id.* (citing, among other cases, *Commonwealth v. Staton*, 38 A.3d 785, 795 (Pa. 2012), for the proposition that a witness' testimony that the victim verbally informed the defendant about a PFA order supported a jury finding that the defendant had sufficient knowledge of the PFA order to be subject to the aggravating circumstance found at 42 Pa.C.S. § 9711(d)(18)).

Applying this law to the circumstances of Appellant's case, the Superior Court found that the evidence of record demonstrated that Appellant "possessed adequate equivalent knowledge of the PFA [order] at issue" to support his conviction for indirect criminal contempt. *Id.* at 6. In this regard, the intermediate court reiterated Sutton's

---

[2] In this context, the Superior Court's use of the term "equivalent knowledge" is irrelevant to our analysis and ultimate conclusion, as discussed in detail *infra*, that the Commonwealth proved that Appellant had knowledge of the final PFA order when he violated it.

testimony that, at 3:30 a.m. on the night in question, she informed Appellant, as he stood in Yates' basement, "that a PFA order with a two-year duration was in effect and that he was not supposed to be present at Yates' residence." Memorandum at 6. The court noted that, in response to Sutton, Appellant asked her not to call the police.

The Superior Court further explained that "[o]ther testimony established that Appellant redirected Yates' security cameras so they could no longer capture images at the property." *Id.* Next, the court observed that, despite all of these circumstances, Appellant returned to Yates' home later in the morning of the day in question. The intermediate court opined that Sutton's statements to Appellant, combined with Appellant's conduct, sufficiently demonstrated Appellant's knowledge and understanding of the PFA order.

In addition, the Superior Court rejected Appellant's more particular arguments in favor of reversing his sentence and conviction. First, the intermediate court was unpersuaded "by Appellant's objections asserting no evidence of Appellant's actual receipt of the PFA order on or before September 12, 2019, no evidence of service attempts by or issuance of the order to law enforcement officials, and lack of evidence showing that police authorities advised Appellant about the issuance of the final PFA order and the attendant consequences of disobedience." *Id.* at 7. According to the court, "Appellant's actual receipt of the final PFA order is not the sole means by which the Commonwealth could prove the notice requirement for indirect criminal contempt. That element may be shown through either actual notice or its constructive equivalent, as occurred here." *Id.* (citing *Padilla*, 885 A.2d at 997).

Lastly, the Superior Court disagreed with Appellant's claim that police officials were required to inform him of the issuance of the final PFA order and the consequences of violating it. The court opined, "Although the Commonwealth established the notice

requirement in *Padilla* through an officer's telephone communications with the defendant, our review of that decision confirms that the 'officer' status of the informing party was neither significant nor germane to our conclusion." *Id.* at 7-8. For these reasons, the Superior Court affirmed Appellant's judgment of sentence.

### III. Petition for Allowance of Appeal

Appellant filed a petition for allowance of appeal in this Court, which we granted to consider the following question, as phrased by Appellant:

> Whether the Superior Court misinterpreted *Commonwealth v. Padilla*, 885 A.2d 994 (Pa. Super. 2005), and, therefore, erred in concluding that constructive notice of the order or decree in question, so as to support a conviction for Indirect Criminal Contempt, can be provided to the defendant by a person who was neither a law enforcement officer tasked with enforcing the order nor designed by the court to provide such notice?

*Commonwealth v. Stevenson*, 261 A.3d 378 (Pa. 2021).

### IV. Parties' Arguments

Appellant argues to this Court that the Superior Court in *Padilla* concluded that the Commonwealth can meet the notice element of indirect criminal contempt by demonstrating that the defendant received verbal notice of the PFA order only from a member of law enforcement or a party delegated by the trial court to give notice, and, by implicit corollary, any other verbal notice is ineffective. Appellant takes the position that the facts in *Padilla* make this clear, as the informing party in that case was a police officer. Thus, Appellant contends, the Superior Court in *Padilla* correctly concluded that Padilla had notice of the entry of a PFA order when an officer informed him that such an order had been entered against him and that a violation of that order could lead to criminal charges.

Appellant insists that the alleged holding in *Padilla* is consistent with, and supported by, the plain language of the PFA Act. In this regard, Appellant relies primarily upon Subsections 6106(g) and 6109(a) of the PFA Act. Subsection 6106(g) states:

The petition and orders shall be served upon the defendant, and orders shall be served upon the police departments and sheriff with appropriate jurisdiction to enforce the orders. Orders shall be promptly served on the police and sheriff. Failure to serve shall not stay the effect of a valid order.

23 Pa.C.S. § 6106(g). While Subsection 6109(a) provides:

A copy of an order under this chapter shall be issued to the plaintiff, the defendant and the police department with appropriate jurisdiction to enforce the order or agreement in accordance with the provisions of this chapter or as ordered by the court or hearing officer.

23 Pa.C.S. § 6109(a).

Appellant highlights that these statutory subsections, as well as other provisions of the PFA Act, repeatedly require the involvement of local law enforcement personnel in the PFA process. In Appellant's view, because the Legislature mandated through these statutes that PFA orders must be issued to and served upon local law enforcement, the plain language of the PFA Act suggests that law enforcement, or someone designated by the trial court, must provide the subject of a PFA order with notice of said order before that person can be found guilty of indirect criminal contempt for violating the order. Appellant asserts that anything less renders a conviction for indirect criminal contempt unsupported by sufficient evidence.

Applying this rationale to the circumstances of his case, Appellant argues that the evidence of record is insufficient to establish that he received proper notice of the final PFA order before the incidents that occurred on September 12, 2019. Appellant emphasizes that the record is devoid of any evidence that the final PFA order was issued to local law enforcement or that local law enforcement or a court-designated party spoke to him regarding the entry and consequences of the final PFA order. Instead, Appellant observes, the only evidence that the Commonwealth offered regarding his notice of the final PFA order was Sutton's testimony, which, he contends, did not demonstrate that she was a member of law enforcement or designated by the trial court to provide him with

notice of the entry of the final PFA order. In any event, Appellant maintains that the record clearly establishes that Sutton made no specific mention of the PFA order and that she did not clarify the repercussions of violating the order. Thus, Appellant submits that this Court should reverse his sentence and conviction for indirect criminal contempt.

In response, the Commonwealth maintains that Appellant has failed to meet his burden of persuading this Court that the Superior Court erred by affirming his judgment of sentence. Contrary to Appellant's primary argument, the Commonwealth contends that the Superior Court's decision in this case is consistent with its opinion in *Padilla*, *supra*. According to the Commonwealth, the Superior Court in *Padilla* held that, despite the fact that Padilla had not been served with the PFA order that he was charged with violating, the Commonwealth proved that he had sufficient verbal notice of the order. The Commonwealth insists that the fact that an officer provided the verbal notice to Padilla simply has nothing to do with the *Padilla* court's ultimate holding.

Applying *Padilla*, the Commonwealth argues, the Superior Court in the instant matter correctly found that the Commonwealth established that Sutton provided Appellant with adequate verbal notice of the PFA order. The Commonwealth reminds this Court that, immediately after Sutton stated that Appellant could not be in Yates' home, he told Sutton that he was leaving and asked that she not call the police. Thus, the Commonwealth contends, Appellant clearly knew that he could not be in the home and that he could be arrested for doing so. Accordingly, the Commonwealth submits that, because Appellant knowingly violated the PFA order, the Superior Court properly affirmed Appellant's judgment of sentence.

The Commonwealth dedicates the remainder of its brief to demonstrating the validity of the Superior Court's holding that a member of law enforcement or a court-designated person need not provide the notice of the final PFA order to a defendant to

support a conviction for indirect criminal contempt. The Commonwealth argues that the Superior Court correctly concluded that: (1) Pennsylvania law makes clear that the Commonwealth may establish the notice element of indirect criminal contempt with evidence showing that the defendant received actual notice or possessed equivalent knowledge of a PFA order; (2) verbal communications can adequately convey notice that a PFA order has been entered against the defendant and that a violation of that order places the defendant at risk of criminal sanctions; (3) its decision was consistent with this Court's precedent, such as *Staton, supra*; and (4) the PFA Act provides no support for Appellant's claim that notice of the existence a PFA order and the potential legal consequences of violating it must be transmitted by a law enforcement officer or a court-designated person. For these reasons, the Commonwealth advocates that we affirm the Superior Court's judgment, which affirmed Appellant's judgement of sentence.

## V. Discussion

The object of the PFA Act is self-evident – to protect PFA plaintiffs from abuse.[3] A plaintiff commences proceedings under the PFA Act by filing a petition in a trial court

---

[3]   To the extent that we must interpret the PFA Act in this appeal, that task is guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991. Pursuant to the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b).

We further observe that Appellant has framed his claim as a challenge to the sufficiency of the evidence. Faced with such a challenge, an appellate court should determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as a verdict winner, was sufficient to allow the fact finder to conclude that the Commonwealth established the challenged criminal element of the offense beyond a reasonable doubt. *Commonwealth v. Yandamuri*, 159 A.3d 503, 514 (Pa. 2017). "It is well-established that the Commonwealth may sustain its burden of proof by means of wholly circumstantial

alleging abuse by the named defendant. 23 Pa.C.S. § 6106(a). If, as occurred here, a plaintiff seeks a temporary PFA order, then the court conducts *ex parte* proceedings and may enter an order protecting the plaintiff from immediate and present danger of abuse. *Id.* at § 6107(a) and (b). In any event, a court shall hold a hearing within 10 days of the filing of the initial PFA petition, where the plaintiff must prove the allegations of abuse by a preponderance of the evidence. *Id.* at § 6107(a). The defendant must be provided with notice of this 10-day (final PFA) hearing and advised of his rights to, *inter alia*: (1) be represented by counsel; (2) present evidence; and (3) compel attendance of witnesses. *Id.* at § 6107(a).

After the court holds such a hearing, it may issue an order directing the defendant to refrain from abusing the plaintiff. *Id.* at § 6108(a)(1). In addition, the order may, *inter alia*, grant "possession to the plaintiff of the residence or household to the exclusion of the defendant by evicting the defendant[.]" *Id.* at 6108(a)(2). Important to the instant matter, the PFA Act explicitly provides that a final PFA order must inform the defendant that a violation of the order will lead to the defendant's arrest and possible conviction for indirect criminal contempt. *Id.* at § 6108(g).

The service provisions of the PFA Act also are significant to this appeal. In this regard, the Act states, in pertinent part, that a "copy of an order under this chapter shall be issued to the plaintiff, the defendant and the police department with appropriate jurisdiction to enforce the order or agreement in accordance with the provisions of this chapter or as ordered by the court or hearing officer." *Id.* at § 6109(a); *id.* at § 6106(g).

---

evidence and the [fact-finder], while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence." *Id.*

Notably, however, "[f]ailure to serve shall not stay the effect of a valid order." *Id.* at § 6106(g).

Turning to the law of contempt, we note that, generally speaking, "[c]ontempt of court is the obstruction of the court's orderly process." *Crozer-Chester Med. Ctr. v. Moran*, 560 A.2d 133, 136 (Pa. 1989). There are two types of criminal contempt: direct and indirect.[4] *Id.* "Direct contempt is obstruction by conduct, word or deed in the presence of the court and is a summary offense." *Id.* "It is summary because its proofs are evident; the authority and orderly process of the court are directly confronted upon its open record and the evidence is plain and usually self-accusing." *Id.*

Indirect contempt is committed by obstructive conduct that occurs outside of the court's presence. *Id.* Thus, unlike direct contempt, the problematic conduct is not self-evident or self-accusatory. *Id.* As such, indirect contempt cannot be punished summarily. Rather, "[w]hen one is charged with indirect contempt[,] those charging such contempt are put to the usual proofs required to convict for any charge, including the right to trial by jury. This is so, because the court has no direct, immediate proof of something beyond its immediate view." *Id.*

Along these lines and relevant to this appeal, because a PFA order can forbid otherwise legal activity, fundamental fairness dictates that the subject of a PFA order has an interest in knowing of the existence of the order before he is punished criminally for violating it. Thus, this Court has recognized the standard that, to prove a defendant guilty of indirect criminal contempt, the Commonwealth must establish beyond a reasonable doubt, *inter alia*, that the defendant had notice of the order that he allegedly violated. *Commonwealth v. Baker*, 766 A.2d 328, 331 (Pa. 2001). The very narrow issue presented in this appeal concerns whether the Commonwealth must prove that this notice was

---

[4] A finding of contempt of court also can be civil in nature, but that process is irrelevant to the instant appeal.

provided to the defendant by a member of law enforcement or a person appointed by the court to convict the defendant of indirect criminal contempt due to a violation of the order in question.

In answering this question, we first reject Appellant's argument that the PFA Act supports his position that this notice must be provided to a defendant specifically by a member of law enforcement or a person appointed by the trial court to provide such notice. To be sure, the PFA Act involves law enforcement in the PFA process; for example, it mandates that local law enforcement, along with the defendant, be served with the PFA order. *See, e.g.*, 23 Pa.C.S. § 6106(g) (stating that the PFA "petition and orders shall be served upon the defendant, and orders shall be served upon the police departments and sheriff with appropriate jurisdiction to enforce the orders"). However, the PFA Act simply makes no mention of who must provide notice to a defendant. Accordingly, the PFA Act does not assist in defining the notice element that must be established by the Commonwealth to convict a defendant of indirect criminal contempt.

We also agree with the Superior Court that Appellant misinterprets the intermediate court's decision in *Padilla*. Indeed, we concur with the Superior Court's assessment where it stated, "Although the Commonwealth established the notice requirement in *Padilla* through an officer's telephone communications with the defendant, our review of that decision confirms that the 'officer' status of the informing party was neither significant nor germane to our conclusion." Memorandum at 7-8.

Turning now to this Court's precedent, as observed *supra*, in *Stallworth* and *Staton*, we held that, for purposes of the aggravating circumstance found at 42 Pa.C.S. § 9711(d)(18) (specifying that an aggravating circumstance for the death penalty exists where the defendant killed the victim at a time that the defendant was subject to a protective order involving the victim), the Commonwealth can prove that a defendant

convicted of first-degree murder was subject to a protective order, such as a PFA order, if it can demonstrate that, at the time of the killing, the defendant had actual notice or equivalent knowledge of the PFA order. *See Staton*, 38 A.3d at 793-95 (discussing *Stallworth* and this proposition of law). Notably, our decisions contain no language suggesting that the Commonwealth must prove that notice of the PFA order was provided to the defendant by a member of law enforcement or person appointed by the trial court.

Having examined the statutory provisions and case law Appellant provided in support of his position, we have found no indication that the law requires what Appellant claims. Rather, the law clearly spells out that, to be convicted of indirect criminal contempt for violating a PFA order, a defendant must simply have notice of the order, regardless of whether that notice is obtained: (1) by service of the PFA order; (2) verbally from anyone; or (3) by other scenarios that can establish that the defendant had knowledge of the order. We find that this standard, when applied to the Commonwealth's burden of proving the notice element of indirect criminal contempt, appropriately balances the defendant's interest in knowing of the existence of the PFA order with the PFA Act's objective of protecting PFA plaintiffs from abuse.

In addition, this standard is consistent with the manner in which the law generally imputes notice on individuals. By way of example, Black's Law Dictionary provides, "A person has notice of a fact or condition if that person (1) has actual knowledge of it; (2) has received information about it; (3) has reason to know about it; (4) knows about a related fact; or (5) is considered as having been able to ascertain it by checking an official filing or recording." NOTICE, BLACK'S LAW DICTIONARY (11th ed. 2019). Consequently, this well-balanced proposition of law guides us to hold that, to convict a defendant of indirect criminal contempt for violating a PFA order, the Commonwealth must demonstrate beyond a reasonable doubt that, at the time of the violation, the defendant

had actual knowledge of the PFA order, regardless of how the defendant gained this knowledge.

Applying this holding to the circumstances of this case, we find that the Commonwealth presented sufficient direct and circumstantial evidence that Appellant knew of the PFA order when he violated it. As noted *supra*, it is undisputed that Appellant received the temporary PFA order and was informed that a hearing would be held to finalize the order on September 9, 2019.[5] Yet, Appellant absented himself from that hearing.

Three days following that hearing, Appellant appeared at and surreptitiously entered Yates' home in the early morning hours, when residents normally would be sleeping, and redirected Yates' home's cameras upward, suggesting that he did not want them to capture his image. Upon discovering Appellant in Yates' basement at 3:30 a.m., Sutton informed Appellant, "You can't be here." N.T., 10/25/2019, at 15. Appellant's immediate response was telling: he told Sutton that he was leaving and expressly asked her not to call the police. This statement caused Sutton to exclaim, "You cannot be here. You have a two-year violation. You cannot be here." *Id.* at 16. Indeed, according to her later testimony, which the trial court found credible, Sutton informed Appellant at this time that there was a PFA order in effect. *Id.* at 17.

Notwithstanding all of these circumstances, Appellant reappeared at Yates' home with the family dog later that morning. When Sutton again informed Appellant that he could not be there, he merely responded that he did not care.

Considering this evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth as the verdict winner, we find that it sufficiently demonstrates that Appellant knew of the PFA order when he entered Yates' home in the

---

[5] To be clear, we are not holding that a defendant's knowledge of a temporary PFA order equates to the defendant knowing of a final PFA order.

middle of the night on September 12, 2019, and engaged in the discussion with Sutton. Appellant thereafter violated the PFA order by subsequently reappearing at Yates' home mid-morning on the same day. Appellant's conduct and words on that morning, combined with the circumstances leading up to the incidents, clearly establish that he had sufficient knowledge of the PFA order to sustain a conviction of indirect criminal contempt for violating the order. Given this conclusion, we affirm the judgment of the Superior Court.

Justices Todd, Dougherty, Mundy and Brobson join the opinion.

Justice Mundy files a concurring opinion in which Justice Brobson joins.

Justice Wecht files a dissenting opinion in which Justice Donohue joins.