IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Upper Augusta Township           :
                                    :
                                    :
               v.             :      No. 1373 C.D. 2021
                                    :      Argued: September 9, 2025
BMMA, LLC,                  :
                 Appellant   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT         FILED:  October 23, 2025

        BMMA, LLC (BMMA) appeals an order of the Court of Common Pleas of Northumberland County (trial court) holding Robert Gilligbauer (Gilligbauer), BMMA's principal, in contempt of court and sentencing him to 60 days of incarceration. On appeal, BMMA argues that the trial court erred and abused its discretion because Gilligbauer was not given the opportunity to purge himself of contempt, as required in any civil contempt order. We agree and reverse the trial court.

        BMMA is a limited liability company that owns a property located at 1199 State Route 61 in Sunbury, Pennsylvania, where it operates a junkyard, specializing in disabled vehicles. Gilligbauer is the sole member of BMMA and manager of its business.

        In 2013, Upper Augusta Township (Township) instituted a civil enforcement action[1] against BMMA for storing dilapidated vehicles on its property

---

[1] Section 617.2(a) of the Pennsylvania Municipalities Planning Code states, in relevant part:

    Any person, partnership or corporation who or which has violated or permitted the violation of the provisions of any zoning ordinance enacted under this act or prior enabling laws shall, *upon being found liable therefor in a civil enforcement*

and on the adjacent highway, Route 61, in violation of the Township's zoning ordinance. 2013 Complaint ¶4; Original Record (O.R.), Item No. 3. The matter was resolved when BMMA agreed to repair the fence around the yard and to remove any vehicles parked in front of its property along Route 61.

In 2016, the Township instituted a civil enforcement and injunction action against BMMA because the fence needed repairs and abandoned vehicles continued to be parked in front of its property. The parties settled the matter with a formal stipulation, which was approved by the trial court on December 8, 2017 (Court Order). In the approved stipulation, BMMA agreed to install a new fence and to keep the property in front of the fence and the road adjoining the property free of disabled vehicles. Stipulation ¶1.a-b; Reproduced Record at 11a (R.R. __). In addition, BMMA agreed to inspect the property "on a weekly basis" to ensure compliance with the stipulation. Stipulation ¶1.b; R.R. 11a.

On June 15, 2018, the Township filed a motion to hold BMMA and Gilligbauer in contempt of court, alleging that BMMA had not yet installed the new fence and disabled vehicles continued to be parked along Route 61. On September 6, 2018, the trial court granted the motion, ordering BMMA to comply with the Court Order and to pay the Township $500 for its costs of prosecution. The order cautioned that failure to comply with the Court Order would result in additional sanctions.

---

*proceeding commenced by a municipality*, pay a judgment of not more than $500 plus all court costs, including reasonable attorney fees incurred by a municipality as a result thereof. *No judgment shall commence or be imposed, levied or payable until the date of the determination of a violation by the district justice. If the defendant neither pays nor timely appeals the judgment, the municipality may enforce the judgment pursuant to the applicable rules of civil procedure.*

. . . .

Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10617.2(a) (emphasis added).

In August of 2019, the Township filed a second contempt motion, alleging that BMMA continued to allow disabled vehicles to be dropped off and placed on the property in front of the fence and along Route 61. On January 16, 2020, the trial court granted the Township's motion, ordering BMMA to pay the Township a fine of $1,000 and $450 for its costs of prosecution. The order stated that BMMA could be excused from the fines by removing "all junked vehicles parked in front of the fence on the property and [completing] the remaining section of fence." Trial Ct. Order, 1/16/2020; O.R., Item No. 35. The order cautioned that failure to comply with the Court Order would result in additional sanctions.

In December 2020, the Township filed a third contempt motion, alleging that disabled vehicles continued to appear in front of the fence and that BMMA had not paid the fine ordered in the prior contempt proceeding. On March 30, 2021, the trial court granted the motion, ordering BMMA to pay the Township the $1,450 ordered in the 2019 contempt proceeding; to pay an additional $1,450 to the Township; and to remove all vehicles parked in front of the fence and along Route 61 within 30 days. The order stated that "[*f*]ailure to abide by the provisions of this Order, will result [in] this Court imposing possible additional sanctions, including incarceration of Defendant BMMA, LLC and Robert Gilligbauer, its sole member." Trial Ct. Order, 3/30/2021; O.R., Item No. 40 (emphasis added).

In July of 2021, the Township filed a fourth contempt motion, alleging that disabled vehicles were parked in front of the fence on BMMA's property in violation of the Court Order. A hearing was scheduled for September 21, 2021, which was rescheduled for November 4, 2021, upon request of BMMA.

Neither Gilligbauer nor his counsel appeared at the hearing on November 4, 2021. In support of the contempt motion, Marlin Sowers, III, the

Township's zoning officer, testified that BMMA was in violation of the Court Order because as of November 2, 2021, approximately 12 disabled vehicles, including a camper, were parked outside the property's fence. At the conclusion of the hearing, the trial court stated as follows:

> The Court is familiar with the property. The Court went by and saw the property several times since the last hearing. In fact, I don't think it was longer than a day or two after the hearing was over when the township basically dropped the matter at that point. I guess – I believe they did because he had in essence complied. And then only within days later cars started showing up. And it's now worst [sic] than it ever has been, including there's a camper or something parked on the property.

> This Court is at the end of the line with Mr. Gilligbauer. In fact he probably – if he were here today I would be sending him to Northumberland County jail. So I'm going to issue a bench warrant – I'm going to find him in contempt – you don't have to say another word, Mr. Finn [(Township's solicitor)]. I'm going to find him in contempt, and I'm going to issue a bench warrant for his arrest.

Notes of Testimony (N.T.), 11/4/2021, at 5-6; R.R. 47a-48a. The trial court then entered the following order:

> AND NOW, this 4th day of November, 2021, after hearing on Plaintiff, Upper Augusta Township's Motion to hold Defendant BMMA, LLC and Robert Gilligbauer, its sole member, in Contempt of Court, and Defendant and his counsel not appearing for said hearing, **IT IS HEREBY ORDERED AND DIRECTED** as follows:

> 1.      BMMA, LLC and Robert Gilligbauer, its sole member are found in Contempt of Court.

> 2.      Defendant shall pay Five Hundred ($500.00) Dollars to Plaintiff and shall pay costs of the Court.

> 3.      Defendant Robert Gilligbauer is herewith sentenced to sixty (60) days in the Northumberland County Jail for Contempt.

4

Trial Court Order, 11/4/2021; R.R. 18a.[2]

The following day, Gilligbauer reported to the county jail to begin serving his 60-day sentence of incarceration.[3]  Simultaneously, BMMA filed a motion for reconsideration and modification of the order of November 4, 2021, for the stated reason that it did not receive notice of the rescheduled hearing.  It explained that the Prothonotary's Office placed a copy of the rescheduling order in the file but did not distribute it.  The trial court scheduled a hearing on BMMA's reconsideration motion.

At the reconsideration hearing on December 1, 2021, BMMA informed the trial court that Gilligbauer intended to get out of the business and in the past two weeks had moved numerous vehicles off the property.  It further explained that Gilligbauer, who has significant health issues, was unable to sleep in the county jail.  Gilligbauer testified that in May 2021, BMMA's large loader had broken down and could not be repaired or moved.  As a result, the vehicles dropped off could not be moved.  However, Gilligbauer explained that he then rented a new loader and used it to remove all the vehicles, including the camper, parked in front of the fence.  He also removed 25 cars from the front of the property to the back of the property.  Gilligbauer further testified that he is "not buying any more cars from any towing companies.  They're not dropping cars off any longer."  N.T., 12/1/2021, at 11; R.R. 94a.

---

[2] Corporate officers and members of a limited liability company can be held liable in contempt for the failure of the corporation or the limited liability company to comply with a court order.  *North Strabane Township v. Majestic Hills LLC*, 329 A.3d 87, 103 (Pa. Cmwlth. 2024) (citing *West Pittston Borough v. LIW Investments, Inc.*, 119 A.3d 415, 421 (Pa. Cmwlth. 2015)).

[3] On November 10, 2021, the trial court ordered Gilligbauer's release from incarceration when he contracted COVID-19.  On November 29, 2021, Gilligbauer returned to the county jail to serve the balance of his sentence.  Trial Ct. Order, 11/10/2021; O.R., Item No. 50.

On cross-examination, Gilligbauer acknowledged that he had been found in contempt of the Court Order on two previous occasions and that he had not paid the fine to the Township ordered on November 4, 2021.

The trial court denied reconsideration, stating that "[t]here is no guarantee that if Mr. Gilligbauer gets out, and things won't return to the way they were." N.T., 12/1/2021, at 15; R.R. 98a. The trial court ordered Gilligbauer "to complete [his] sentence in the Northumberland County Jail." *Id*.

BMMA and Gilligbauer filed the instant appeal.[4]

On appeal,[5] BMMA raises two issues:

> I.      Did the Trial Court commit an error of law or abuse its discretion in entering a sentence of incarceration for civil contempt without a provision that would allow contemnor to purge himself of contempt?
>
> II.      If the Trial Court styles this as a contempt under 42 Pa.C.S. §4132 et seq., did the Court commit an error of law or abuse its discretion if it found a direct contempt when the evidence did not establish a direct contempt; or, if it found an indirect contempt, did it err in not applying the provisions of Subchapter C of Chapter 41 of the Judicial Code[6] including advising defendant the Court was proceeding as such so as to put him on notice that he had the right to bail, a reasonable time to prepare a defense and, upon demand, a right to request a trial by jury or a determination of the matter by a different judge?

BMMA Brief at 4.

---

[4] On December 13, 2021, BMMA filed an application to stay the order of incarceration pending appeal with this Court. On December 21, 2021, this Court granted the motion, ordering the trial court to release Gilligbauer from incarceration. Gilligbauer was released from jail on December 23, 2021. Trial Ct. Order, 12/22/2021; O.R., Item No. 59.

[5] This Court's review of a court order determines whether the trial court committed an error of law or abused its discretion. *Borough of Slatington v. Ziegler*, 890 A.2d 8, 11 n.1 (Pa. Cmwlth. 2005).

[6] 42 Pa. C.S. §§4131-4139.

6

We begin with a review of legal principles applicable to contempt proceedings.

Courts "possess an inherent power to enforce their orders by way of the power of contempt." *Department of Environmental Protection v. Cromwell Township, Huntingdon County*, 32 A.3d 639, 653 (Pa. 2011) (quoting *Commonwealth v. Bowden*, 838 A.2d 740, 760 (Pa. 2003)). Contempt proceedings may be either criminal or civil in nature. *County of Fulton v. Secretary of Commonwealth*, 292 A.3d 974, 1027 (Pa. 2023). The distinction turns on "the court's dominant purpose in using the contempt power." *Diamond v. Diamond*, 792 A.2d 597, 600 (Pa. Super. 2002).[7]

Civil contempt compels compliance with court orders. *Cecil Township v. Klements*, 821 A.2d 670, 675 (Pa. Cmwlth. 2003). Criminal contempt punishes a person for violation of a court order. *Fetzer v. Fetzer*, 336 A.3d 1058, 1065 (Pa. Super. 2025). The Pennsylvania Supreme Court has explained the difference as follows:

> A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order, while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance.
>
> The civil-criminal classification of contempt exists solely for determination of a contemnor's procedural rights and a court's sentencing options. Quite simply, a contemnor who will be sentenced to a determinate term of imprisonment or a fixed fine, which he is powerless to escape by purging himself of his

---

[7] In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues. *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

contempt, is entitled to the essential procedural safeguards that attend criminal proceedings generally.

*In re Martorano*, 346 A.2d 22, 28-29 (Pa. 1975) (citations and footnotes omitted).

Criminal contempt can be classified as direct or indirect. "Direct contempt is obstruction by conduct, word or deed in the presence of the court and is a summary offense." *Crozer-Chester Medical Center v. Moran*, 560 A.2d 133, 136 (Pa. 1989). "Indirect contempt is obstructive conduct committed beyond the court's presence." *Id*. "A criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance." *In re Martorano*, 346 A.2d at 28.

Because of its fixed term of imprisonment, an order of criminal contempt requires procedural safeguards. The Judicial Code provides that a person charged with indirect criminal contempt has a right to bail; to notice of the accusation; and a reasonable time to make a defense. 42 Pa. C.S. §4136(a)(1)-(2).[8] Precedent has established that the right to prepare a defense includes the right to assistance of counsel in criminal contempt proceedings. *Fetzer*, 336 A.3d at 1068 (quoting *Commonwealth v. Bartic*, 303 A.3d 124, 132 (Pa. Super. 2023)). To prove criminal contempt,

> *evidence must be sufficient to establish*: the court's *order was definite, clear*, specific, and leaving no doubt in the person to whom it was addressed of the conduct prohibited; the *contemnor*

---

[8] It states:

> **(a) General rule.**--A person charged with indirect criminal contempt for violation of a restraining order or injunction issued by a court shall enjoy:
>
> > (1) The rights to bail that are accorded to persons accused of crime.
> >
> > (2) The right to be notified of the accusation and a reasonable time to make a defense, if the alleged contempt is not committed in the immediate view or presence of the court.

42 Pa. C.S. §4136(a)(1)-(2).

*had notice of the order*; the act constituting the *violation was volitional*; and the *contemnor acted with wrongful intent*.

*Commonwealth v. McMullen*, 961 A.2d 842, 849 (Pa. 2008) (internal citation omitted) (emphasis added). The evidence must establish the contemptuous conduct beyond a reasonable doubt. *Fetzer*, 336 A.3d at 1068.

In contrast to criminal contempt, the hallmark of a civil contempt order is that it must "state the condition which upon fulfillment will result in the release of the defendant or the remission of the fine." *Knaus v. Knaus*, 127 A.2d 669, 674 (Pa. 1956). Our Supreme Court has explained:

> Before a defendant may be committed for civil contempt, it is essential that it be clear what is required of him in order to purge himself of the contempt, and the commitment order should state the condition which when complied with will release him. In the absence thereof, a commitment for civil contempt is improper.

*Id*. Stated otherwise, a litigant adjudged to be in civil contempt "holds the keys to the jailhouse door." *Diamond v. Diamond*, 715 A.2d 1190, 1194 (Pa. Super. 1998).

In its first, and principal, issue, BMMA argues that the trial court's order of November 4, 2021, sentencing Gilligbauer to 60 days' incarceration, was an invalid civil contempt order because it did not give Gilligbauer the opportunity to purge himself of the contempt. The Township agrees that the trial court issued a civil contempt order. It contends, however, that Gilligbauer was not entitled to a purge condition because BMMA had been found in contempt of court on three prior occasions, *i.e.*, September 6, 2018; January 16, 2020; and March 30, 2021. Each time, BMMA was warned that "continued violations of the order would result in additional sanctions, including incarceration." Township Brief at 6. Further, BMMA made no effort to "cure the violations prior to the hearing" on November 4, 2021. *Id*. at 6-7.

9

The trial court concluded that a purge condition was not necessary in its order of November 4, 2021, because BMMA had been given "more than ample opportunities to purge [itself] of the contempt which [it] repeatedly failed to do." Trial Court Pa.R.A.P. 1925(a) Op. at 3; O.R., Item No. 64. We disagree.

A civil adjudication of contempt "coerces with *a conditional or indeterminate sentence* of which *the contemnor may relieve himself by obeying the court's order*[.]" *Crozer-Chester Medical Center*, 560 A.2d at 137 (quoting *In re Martorano*, 346 A.2d at 28) (emphasis in original). Because the goal is compliance with its order, a "court *must* impose conditions on the sentence so as to permit the contemnor to purge himself; he must be allowed to carry the keys to the jail in his pocket." *Woodruff v. Lower Southampton Township*, 516 A.2d 834, 835 (Pa. Cmwlth. 1986) (emphasis added). There is no air in this requirement. It is of no moment whether it is the first or fourth time the individual has been adjudged a contemnor. *See generally Borough of Slatington*, 890 A.2d at 8 (borough filed five contempt petitions against the landowner for violating a consent decree and each contempt order included a purge option).[9]

In sum, before a contemnor can be incarcerated under an order of civil contempt, it must be "clear what is required of him in order to purge himself of the contempt, and the commitment order should state the condition which when complied with will release him." *Knaus*, 127 A.2d at 674. In the absence of a purge condition, "a commitment for civil contempt is improper." *Id*. Here, the trial court ordered Gilligbauer to serve 60 days' incarceration in the county jail without

---

[9] Here, the Court Order in question imposed ongoing duties upon BMMA. Essentially, BMMA bound itself, apparently for all time, to move all disabled vehicles towed to its property within one week of their delivery to the area of BMMA's property behind the fence along Route 61. Any failure to meet this obligation violated the Consent Order and can prompt a contempt motion.

providing, in clear terms, the condition for his release. The trial court erred in concluding that the order of civil contempt did not need a purge condition.

In its second issue, raised in the alternative, BMMA argues that if the trial court's order was intended to be an order of criminal contempt, BMMA was "entitled to all of the procedural safeguards afforded to [a] criminal defendant, including the right to trial by jury," which were not afforded to BMMA. BMMA Brief at 12. The Township responds that BMMA's argument is moot because "the trial court has styled this proceeding as [a] civil contempt proceeding[.]" Township Brief at 11.

The trial court did not specify the nature of its contempt order of November 4, 2021. Suggesting that its intention was to punish, not to coerce, the trial court stated at the hearing as follows:

> This Court is at the end of the line with Mr. Gilligbauer. In fact he probably – if he were here today I would be sending him to Northumberland County jail. So I'm going to issue a bench warrant – I'm going to find him in contempt . . . . I'm going to find him in contempt, and I'm going to issue a bench warrant for his arrest.

N.T., 11/4/2021, at 5-6; R.R. 47a-48a. Further, the trial court directed a mandatory and unconditional term of imprisonment. Punishment that does not "empower contemnors to 'escape' their punishment" is "categorized as criminal, despite the presence of 'procedural indicia' of civil contempt." *Fetzer*, 336 A.3d at 1067 (quoting *Crozer-Chester Medical Center*, 560 A.2d at 138). On the other hand, at the reconsideration hearing, the trial court stated that if Gilligbauer were released, "things won't return to the way they were," which suggests an intention to coerce compliance with the Court Order. N.T., 12/1/2021, at 15; R.R. 98a.

11

Indirect criminal contempt requires certain procedural safeguards, including the right to prepare a defense and be heard with assistance of counsel. *Fetzer*, 336 A.3d at 1068.[10] The absence of these procedures renders a contempt order invalid. *See, e.g.*, *Commonwealth v. Pruitt*, 764 A.2d 569, 576 (Pa. Super. 2000) (contempt conviction reversed because contemnor did not receive adequate notice of accusations and opportunity to present a defense). Because BMMA was not afforded the procedural safeguards required in a criminal contempt proceeding, the order of November 4, 2021, cannot be sustained as an order of criminal contempt.

We conclude that the trial court's order of November 4, 2021, was a civil contempt order that failed to include the mandatory purge condition and, thus, invalid. Accordingly, we reverse that portion of the trial court's civil contempt order sentencing Gilligbauer to 60 days of incarceration in county jail.

_____

MARY HANNAH LEAVITT, President Judge Emerita

---

[10] In contrast, the procedures due to an individual facing civil contempt for violating an order of court are notice of the alleged contempt and the opportunity to respond. *County of Fulton*, 292 A.3d at 1004.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Upper Augusta Township        :
                                             :
                v.                    :          No. 1373 C.D. 2021
                                             :
BMMA, LLC,                        :
                            Appellant    :

**O R D E R**

AND NOW, this 23rd day of October, 2025, the order of the Court of Common Pleas of Northumberland County, dated November 4, 2021, sentencing Robert Gilligbauer, BMMA, LLC's principal, to 60 days of incarceration is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita